ESTATE OF KAYSER: ELLIS, Appellant, vs. KAYSER, Administrator, Respondent.

*April 8—May 11, 1926.*

*Brokers: Oral contract of employment: Recovery on quantum meruit: Bases of compensation: Evidence: Book entries.*

1. A typewritten entry in the sales book of a real-estate broker, made by the broker's stenographer, who was not shown to be beyond the reach of a subpœna or insane, and it not being shown that the entry was made in the usual course of business contemporaneous with the transaction, or to be true and correct, was not admissible in evidence under sec. 327.25, Stats.  p. 194.

2. Although under sec. 240.10, Stats., an oral contract to pay a broker a commission for the sale of real estate is invalid, on acceptance of the services of the broker by the owner of

property the broker may recover commissions on a *quantum meruit* basis.   p. 194.

3. Evidence which shows that deceased orally employed a broker to sell his farm for an agreed commission of three per cent., that the farm was sold by the broker, that deceased paid one third of the commission in accordance with the contract of brokerage, and that the usual rate of commission on sales of farm lands was three per cent. of the sale price, is *held* to entitle the broker to recover on *quantum meruit* on the basis of three per cent., notwithstanding a finding of the trial court that the broker had rendered no services for which he had not been paid.   p. 195.

4. A real-estate broker's commission is not based on the amount of services but on the result of the services.   p. 195.

APPEAL from a judgment of the county court of Dane county: A. G. ZIMMERMAN, Judge.   *Reversed, with directions.*

The claimant, *Charles T. Ellis,* filed a claim against the estate of Adolph H. Kayser, deceased, for real-estate broker's commission for services rendered in connection with the sale of real estate belonging to the deceased.

The case was tried by the court without a jury, and judgment was entered in favor of the estate and against *Ellis* adjudging that the estate was not indebted to the claimant in any amount and disallowing the claim.   From this judgment the claimant appealed.

The court made findings of fact and conclusions of law as follows:

### "Findings of fact.

"That on or about the 18th day of April, 1924, said Adolph H. Kayser was the owner of the

"West one half of the southwest one quarter, section sixteen (16), of the south eighteen (18) acres in the east one half of the southwest one quarter of said section sixteen (16), all in the town of Blooming Grove, Dane county, Wisconsin.

"That on or about said date he entered into a contract in writing with T. A. Coleman, A. W. Schulkamp, Martin

Loftsgordon, C. C. Doring, M. D. Larson, A. G. Mickelson, A. C. Hoppmann, Elmer Peterson, Herman J. Loftsgordon, and Joe Kleiner in consideration of the sum of two thousand dollars ($2,000) then paid, that the said parties should have the option to purchase the said premises for the sum of forty-seven thousand and two hundred dollars ($47,200), two thousand dollars ($2,000) paid under said option, the said option to expire March 1, 1925, and if not exercised by the said persons on or prior to said day the said Kayser was to retain the said two thousand dollars ($2,000) as liquidated damages.

"That prior to the 1st day of March, 1925, the said parties exercised the said option by paying four thousand dollars ($4,000) further upon the contract and by notifying the representative of said estate of its election to so exercise the said option.

"That said parties obtaining the said option represented the Monona Golf Club, a Wisconsin corporation, and that said option was really made for the benefit of the said club.

"That the said *C. T. Ellis* did not find a purchaser or buyer ready and willing to pay the said sum of forty-seven thousand two hundred dollars ($47,200) and that the said *C. T. Ellis* was not the efficient cause of obtaining a purchaser for the property.

"That the said *C. T. Ellis* rendered no services in and about the sale of the said property under the said option or otherwise, that were not fully paid for.

"That the said Adolph H. Kayser made no contract with the said *C. T. Ellis* to pay him any commission on the sale of said property or for the making of the said option contract or otherwise.

*"Conclusions of law.*

"That the said estate is not indebted to the said *Charles T. Ellis* on account of said claim.

"That said claim is to be wholly disallowed and judgment should be entered in the usual form disallowing said claim of *Charles T. Ellis.*"

The appellant excepted to such findings.

For the appellant there was a brief by *Bagley, Spohn & Ross* of Madison, and oral argument by *Frank A. Ross.*

For the respondent there was a brief by *Hall, Baker & Hall* of Madison, and oral argument by *Frank W. Hall.*

CROWNHART, J.    *Charles T. Ellis,* during the times in question, was a real-estate broker having offices in room 357 in the Washington building, in the city of Madison.    C. C. Doring occupied the same office with *Mr. Ellis.*    He also was a real-estate broker.    Mr. Kayser was an old resident of Madison, and was the owner of a ninety-eight-acre farm on the outskirts of the city.

Several business and professional men were interested in securing a tract of land for a golf club.    They had negotiated with Mr. Kayser for his property and had had two options for the purchase of the land.    There was no money paid for the options and they fell through.    These men were again in the market for a tract of land suitable for a golf club, and had in mind the property of Mr. Kayser as well as two other properties.    Early in April, 1924, Mr. Kayser went to the office of *Mr. Ellis* and talked over with him the matter of selling his land.    Mr. Doring was present and heard the conversation.    Doring was one of a committee of the gentlemen proposing to organize a golf club, whose duty it was to negotiate for a suitable tract of land.    Doring testified that he heard Kayser talk with *Ellis* about a commission for the sale of Kayser's land.    *Ellis* was to receive three per cent. on the sale price of the farm.

"Mr. Kayser told *Mr. Ellis* that he would pay him three per cent. on the sale price of the farm," and *Ellis* "agreed to the amount."    *"Charlie Ellis* said that three per cent. on the sale of this farm was satisfactory, and some discussion—he mentioned something about how that amount was to be paid, whether it should be paid in a lump sum at the time the option was signed. . . . *Charlie Ellis* suggested that one third of it be paid at the time the first payment was made and the balance was to be paid when the payment of $4,000 was made and a land contract executed.    Mr. Kayser said 'I will pay that, then, in that manner.' "

There were negotiations that followed between *Ellis*, representing Kayser, and Doring, representing parties interested in the golf grounds, and finally, on April 18, 1924, the option to purchase was executed between Kayser and the committee; $2,000 in cash was paid down on the option; the option to extend to March 1, 1925, and the $2,000 to be retained as liquidated damages in case the option was not accepted. The price of the premises was to be $47,200. Prior to the 1st day of March, 1925, the parties exercised said option and paid $4,000 further on the contract.

Mr. Kayser kept a ledger account, and in such ledger account, under date of April 18, 1924, the same day the option was entered into for the sale of the premises, there was a debit to *Charles Ellis* of $472, and the figures "4285" representing the check number. This entry was made in the ordinary course of business by Mr. Kayser in his own handwriting. Kayser kept two accounts in this ledger, one "sundries" and the other "farm," and the debit to *Mr. Ellis* was under the column of farm expenditures.

Mr. Kayser kept a bank account in the Bank of Wisconsin, and there was shown on the ledger sheet of Mr. Kayser a debit, April 21, 1924, for $472, on account of a check issued by Mr. Kayser passing through the bank. On the 18th of April, 1924, there appeared on the ledger sheet of Mr. Kayser in the bank a deposit of $2,000.

A son of Mr. Kayser, appointed as administrator, testified that the checks and stubs of his father relating to these accounts had been destroyed.

The appellant testified that he entered a memorandum in his sales book, which was a personal account book, when he got the check from Mr. Kayser. Thereupon the book was produced, and the appellant's attorney read into the evidence the following entry:

"April 18, sold A. H. Kayser in the town of Blooming Grove, 98 acres Monona Golf Club, $47,200. Services,

$1,416.    By check of Mr. Kayser, one-third of services, $472."

It appeared that this entry was made by appellant's stenographer by typewriter.    Thereupon the appellant offered the memorandum in evidence, to which objection was made because incompetent.    The objection was sustained, and the appellant complains of this ruling of the court.    The stenographer was not produced to testify to the entry, and it was not shown that she was beyond the reach of a subpœna, or insane, nor was it shown that the entry was made in the usual course of business contemporaneous with the transaction, or that the entry was true and correct.    Manifestly, the offer did not come within the statute.    Sec. 327.25, Stats.

For obvious reasons the law prohibits the testimony of a person with reference to transactions or communications with a deceased person through whom he claims title to property.    In such a case, ofttimes, the evidence must of necessity be more or less meager.    Here, however, the evidence points unerringly to this situation: Kayser employed *Ellis* to sell his farm property.    He agreed to pay a three per cent. commission on the sale price as fixed.    He agreed to pay one third when the option was entered into, and the balance at the time the option was exercised and a contract of sale made between the parties.    The sale price was to be $47,200; three per cent. would be $1,416, and $472 would be one third of that amount.    This $472 was paid to *Ellis* by Kayser by check upon the Bank of Wisconsin, which check was destroyed after payment.    Further, not only did Kayser employ *Ellis,* but he recognized his services as having been satisfactorily performed and made payment accordingly.

Sec. 240.10, Stats., provides that every broker's contract to pay a commission for the sale of real estate must be in writing and subscribed to by the person to be charged;

hence the oral contract here was invalid. However, this court has held that where the services performed under an oral contract are valuable and are accepted by the other party to the contract, recovery may be had on a *quantum meruit*. *Seifert v. Dirk,* 175 Wis. 220, 184 N. W. 698. The claim of *Mr. Ellis* is on a *quantum meruit.* The evidence shows that three per cent. is the usual and customary commission on the sale of farm lands in Dane county by real-estate brokers. There was no evidence to the contrary; hence, if *Mr. Ellis* is entitled to recover on *quantum meruit,* he is entitled to recover to the amount of his claim herein, which is $944.

The trial court found that *Ellis* did not find a purchaser and that he was not the efficient cause of obtaining a purchaser for the property, and further found that *Ellis* rendered no services in and about the sale of the said property, under the said option or otherwise, that were not fully paid for.

We think the trial court misconceived the legal effect of the evidence. He did not find that *Ellis* and Kayser did not enter into the contract as stated; he did not find that *Ellis,* representing Kayser, did not negotiate with Doring, representing the proposed purchasers of the property; he did not find who was the efficient cause of obtaining a purchaser for the property; he did not find that *Ellis* rendered no services in and about the sale of said property, but he held that *Ellis* rendered no services for which he had not been fully paid. In other words, the court in substance held that the amount of $472 which Kayser paid to *Ellis* was sufficient compensation for the services that *Ellis* rendered Kayser. However, a real-estate broker's commission is not based on the amount of services but on the result of the services. A broker may spend much time and money trying to sell a piece of property, and fail entirely, while again he may succeed in making a sale at the expenditure of very little

time or money. To hold that *Ellis* is not entitled to the amount of his claim is to disregard the testimony as to the value of such services. Kayser recognized the value of the services and made part payment therefor. That seems to be reasonably clear. The trial court expressed himself of the opinion that he should scrutinize the testimony of Doring pretty closely because of the business relations between *Mr. Ellis* and Mr. Doring, and that may have led him to adopt a false premise. The facts and circumstances indicate, as we have pointed out, that Doring's testimony was true, and; being true, is to be given full effect. There was nothing in the facts and circumstances that impeached Mr. Doring as a reliable and truthful witness other than the suspicion in which the court indulged that because of his close relations to *Mr. Ellis* he might be tempted to disregard the truth. But no such temptation was before Mr. Kayser when he made the entry in his books or when he gave *Mr. Ellis* a check for one third of the commission. The book entry of Mr. Kayser, the bank's entry of the check passing through the bank, are sure indicia of the truth of Mr. Doring's statement.

*By the Court.*—The judgment of the county court is reversed, with directions to allow the claim of the appellant.