BEILKE, by guardian *ad litem,* Respondent, vs. KNAACK
and another, Appellants.

*March 7—April 5, 1932.*

For the appellant Knaack there was a brief by *William H. Woodard* of Watertown and *Mistele & Smith* of Jefferson, and oral argument by *Lynn H. Smith.*

For the appellant Leroy Beilke there was a brief by *Ernest H. Pett* and *Sanborn, Blake & Aberg,* all of Madison, and oral argument by *Mr. John B. Sanborn* and *Mr. Pett.*

For the respondent there was a brief by *Grady & Dakin* of Watertown, and oral argument by *Harold M. Dakin.*

NELSON, J. The facts are not in serious dispute. The plaintiff, a boy about nine years of age at the time of the accident, was riding in a Chevrolet coach which was being driven in an easterly direction along highway No. 30 by defendant Beilke. Highway No. 30, at the time of the accident, was a gravel road surfaced with asphalt with a driving surface about eighteen feet wide with three-foot gravel

shoulders. Defendant Elroy Beilke, at the time of the accident, was a little past twenty-one years of age. Both the plaintiff and his brother were en route to the farm of another brother where they planned to do the evening chores. Some little time prior to the accident defendant Knaack was driving his Chevrolet truck along the same highway in the same direction. His truck ran out of gasoline and stalled on the right side of the traveled portion of the highway. The position of the truck after it stalled was on the right side of the road so that a clearance of about thirteen feet of the traveled portion remained. The box or rack of the truck was eighty-four inches in width. While the truck was equipped with suitable headlights and a tail light it did not carry clearance signal lights or reflective signals. When the truck stalled, the defendant Knaack attempted to shove it forward onto the shoulder but was unable to do so. He got out of his truck and examined his tail light to see if it was burning and then proceeded to a near-by farm to procure some gasoline. Just as he was returning to the truck in another car and when within a distance of fifty or sixty feet from the stalled truck, the Beilke car crashed into the rear of the stalled truck. As a result of the collision the plaintiff was seriously injured.

It is insisted by defendant Knaack that the court erred in refusing to grant his motion for judgment in his favor because the verdict as to him was contrary to the evidence. While the finding of the jury that he was negligent in leaving his truck standing on the highway, under all of the circumstances, may be at least open to serious question, the jury found that he was also negligent in not carrying upon his truck clearance signal lights or reflective signals and that such failure was a proximate cause of plaintiff's injuries.

Sec. 85.06 (3), Stats., is as follows:

"(3) *Clearance signals.* Every motor vehicle having a width at any part in excess of eighty inches shall carry two clearance signal lights on the left side of such vehicle, one

located at the front and the other located at the rear of the vehicle, such lights to be of such color and design as is approved by the Industrial Commission. Reflective signals approved by the Industrial Commission may be used in lieu of clearance signal lights, but the center of such signals shall be not more than forty-eight inches above the roadway."

Since this statute clearly required the plaintiff's truck to carry clearance signal lights or reflective signals and since the collision was one between the front end of the Beilke car and the rear end of the truck, we think that the verdict of the jury finding defendant Knaack negligent in failing to carry such clearance signal lights or reflective signals and finding such negligence to be a proximate cause of plaintiff's injuries may not be disturbed.

Defendant Beilke concedes that there is ample evidence to sustain the verdict of the jury finding him negligent, but earnestly contends (1) that judgment should have been ordered in his favor for the reason that the action was improperly maintained against him because he is a brother of the plaintiff and both resided in the same home; (2) that a new trial should have been ordered because (a) the damages found by the jury are excessive, (b) certain hospital records were erroneously admitted to his prejudice, and (c) the court erred in instructing the jury on the question of damages. Defendant Knaack also insists that the damages are excessive and that he too was prejudiced for the reasons stated in (b) and (c).

(1) We see no merit in defendant Beilke's contention that this action is not maintainable against him because of the fact that he and the plaintiff are brothers and at the time of the accident resided in the same home. Defendant Beilke relies upon *Wick v. Wick*, 192 Wis. 260, 212 N. W. 787, and cases cited therein, which hold that a minor child may not bring an action against his father for a tort committed upon the former by the latter. We are not disposed to extend the

rule of the *Wick Case* and hold that a brother may not sue a brother for a tort even though both resided in the same home. No authority supporting defendant's contention that a brother may not sue a brother for a tort when both are members of the same family and reside in the same home has been called to our attention and we have not been able to find any. We perceive no sound reason for holding that a brother should not be liable to a brother for a tort committed upon him.

(2) (a) To the contention that the damages are excessive we cannot agree. The plaintiff was injured on the evening of September 27, 1930. He was taken to the hospital at Watertown where he remained until the 13th of October. As a result of the accident his lower jaw was broken in three different places. One of his permanent teeth was knocked out. He sustained several substantial cuts on his face which have left permanent scars. One of his knees was badly cut. In order to reduce the fracture of his jaw it was necessary to wire the segments together. A subsequent operation was necessary and a third plastic operation. While the results are perhaps as satisfactory as might well be expected from such serious injuries, plaintiff's jaw is not at all as it was before the injury. The broken segment was pushed downward and backward and the operations were not successful in bringing the lower jaw back into its original position. There exists a marked overreaching of the upper jaw which will in all probability be permanent and cause serious inconvenience in biting and chewing. A bony structure or protuberance has formed on the right side of his jaw. This is such as to produce a disfigurement which, according to the medical testimony, will be permanent. Plaintiff has difficulty in opening his mouth and has experienced inconvenience in biting or chewing solids. He of course necessarily suffered great pain for a considerable period of time. The

X-ray pictures found among the exhibits reveal a condition of his jaw which may well cause him serious inconvenience, hardship, and embarrassment for years to come. The damages found by the jury received the approval of the trial court. and we cannot say that they are at all excessive in amount.

(b) The contention that the court erred to the prejudice of the defendants in admitting over their objection certain daily hospital records relating to the condition of the plaintiff and the treatment given to him as a patient, which constituted the history of the plaintiff's case while receiving treatment in the hospital, presents a more serious question. The sisters who nursed the plaintiff and who, in large part, kept the daily records were not produced upon the trial nor was it shown that they were beyond the jurisdiction or insane as provided by sec. 327.25, Stats. So much of said section as relates to the contention made is as follows:

"Entries on cards . . . loose-leaf sheets . . . in the usual course of business, contemporaneous with the transactions to which they relate and as part of or connected with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made upon the testimony either of the person who made the same, or if he be beyond the jurisdiction of the court or insane, of any person having custody of the entries, and testifying that the same were made by a person authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief."

We think that the admission of these records was error but without any prejudicial effect whatsoever. These records were admitted upon the testimony of Dr. Wallner, who stated that, from his observation, the records were correct; that they were the records kept in the hospital and were kept under his direction; that he observed them at least twice every day and knew the records to be correct as far as they

went. · That the records were true and correct there can be no doubt. The principal contention of the defendants is that they were prejudiced especially in the matter of damages found by the receiving of these records in evidence, because they contained recitations of the pain which the plaintiff at times suffered. We have examined each of the daily records received in evidence to ascertain if there may be found therein anything which overemphasizes or exaggerates the pain which the plaintiff obviously suffered. We find only three or four recitations relating to pain. These recitations relate to the day following the accident; to the day of the second operation and the day following, and to the day on which the plastic work was done. These entries are as follows: "September 28. Moaning at times. Has considerable pain." "October 7. Crying and pain at times." "October 8. Moaning and pain at times." "October 11. Crying and pain in the jaw." The daily records contain many recitations of which the following· are typical: "A fairly good night." "Had a good night." "A good day." "A good night." Recitations of this character are far more numerous than the ones mentioning pain. That the plaintiff experienced severe pain as a result of his injuries there can be no doubt. That one whose jaw is broken in three places must suffer severe and excruciating pain is perfectly obvious. We are unable to see how the admission in evidence of these entries prejudiced the defendants.

(c) The court properly instructed the jury as to the damages and then, for some reason not apparent, stated :

: "The sum you fix will only be interfered with if the court determines, after receiving your verdict, that you did not exercise proper judgment. Only in those cases will the court interfere with the amount. Ordinarily the amount you agree upon is the amount that will go into the judgment."

We think that this instruction was improper. It might well have been understood by the jury as permitting the as-

sessment of damages which, if too high or excessive, would be corrected by the court. The assessment of damages, at least in the first instance, is clearly the duty and responsibility of the jury and it should not be told that its failure to exercise proper judgment will be interfered with by the court. A jury should not be told that its mistakes or judgment will be corrected by the court. While we are of the opinion that the instruction complained of should not have been given, a careful consideration of the instructions as a whole, together with the damages found, convinces us that the jury did not act upon the particular instruction complained of or find excessive damages to the prejudice of the defendants.

*By the Court.*—Judgment affirmed.