Ernest A. Rozell, an Infant, by Ernest D. Cowles, His Guardian ad Litem, Respondent, *v.* Evelyn D. Rozell, an Infant, by George Rozell, Her Guardian ad Litem, Appellant.

Third Department, January 11, 1939.

*Walter A. Chambers* [*Walter A. Chambers* and *William B. Skane* of counsel], for the appellant.

*Leary & Fullerton* [*James A. Leary* of counsel; *Walter A. Fullerton* with him on the brief], for the respondent.

Heffernan, J. Defendant is appealing from a judgment entered on the verdict of a jury in plaintiff's favor for the sum of $5,000 in an action to recover damages for personal injuries due, it is said, to the negligence of defendant.

But two questions are presented for review: (1) That the action is not maintainable, and (2) that the damages are excessive.

Plaintiff and defendant are brother and sister, respectively, the former twelve years of age at the time of the accident and the latter sixteen. Both infants are unemancipated, unmarried, have no separate estates, and, when plaintiff sustained his injuries, both were living with their parents and were being supported by them.

On May 2, 1937, plaintiff was a passenger in an automobile operated by defendant. That car collided with another motor vehicle on a public highway in the city of Glens Falls, and plaintiff was injured.

On this appeal defendant does not challenge the finding of the jury that the collision was due solely to her own negligence. Her principal contention is that public policy prohibits the maintenance of the action on the theory that such a suit seriously disturbs family relationships and is destructive of the family unit and also that such an action is an invitation to fraud when the owner of the car involved is protected by insurance against liability for personal injuries. The proof does not show who was the owner of the car in which plaintiff and defendant were riding. On the argument counsel for defendant stated that the owner of the vehicle is protected by liability insurance and asserted that otherwise this action never would have been instituted.

The term public policy, being of such vague and uncertain meaning and of such variable quantity, has frequently been said not to be susceptible of exact or precise definition. (50 C. J. 857.) The courts have, however, frequently approved Lord Brougham's definition of public policy as the principle which declares that no one can lawfully do that which has a tendency to be injurious to the public welfare. (12 Am. Jur. 666.) The very meaning of public policy is the interest of persons other than the parties. (*Beasley* v. *Texas & P. R. Co.*, 191 U. S. 492.) What the public policy is must be determined by the Constitution, the laws, the course of administration and decisions of the courts of last resort of the States. (12 Am. Jur. 668; 50 C. J. 858, 859.) A State has no public policy cognizable by the courts which is not derived or derivable by clear implication from the established law of the States as found in the Constitution, statutes and judicial decisions. (*People* v. *Hawkins*, 157 N. Y. 1; *Weeks* v. *New York Life Ins. Co.*, 128 S. C. 223; 122 S. E. 586.) The public policy of this State where the Legislature acts is what the Legislature says it shall be. (*Messersmith* v. *American Fidelity Co.*, 232 N. Y. 161.)

It is well established that a minor child cannot sue his parent for a tort. The peace of society, and of the families composing society, and a sound public policy, designed to subserve the repose of families and the best interests of society, forbid to the minor child a right to appear in court in the assertion of a claim to civil redress for personal injuries suffered at the hands of the parent. (20 R. C. L. 631; *Sorrentino* v. *Sorrentino*, 248 N. Y. 626.)

It is equally well established that infants and persons of unsound mind are liable for their tortious negligence. (*Williams* v. *Hays*, 143 N. Y. 442.) Liability in a civil action is imposed not as a mode of punishment, but of compensation. If property has been destroyed or other loss occasioned by a wrongful act, it is just that the loss should fall upon the estate of the wrongdoer rather

than on that of a guiltless third person and that without reference to the question of moral guilt. Consequently, for every tortious act of violence or other pure tort, the infant tort feasor is liable in a civil action to the injured person. Children of ten, six, five and even four years of age have been held liable for acts of violence and liability has often been imposed for the injuries caused by such acts, though committed in play and without the intention to inflict substantial injury. (*Collins* v. *Gifford*, 203 N. Y. 465; *Huchting* v. *Engel*, 17 Wis. 230; 14 R. C. L. 259, 260.)

We know of no rule of sound public policy in this State which prohibits the maintenance of the action under review. Certainly no such conclusion can be deduced from our Constitution, statutes or judicial decisions of our highest court. Our research has disclosed no authority in England or in the courts of our sister States which expressly or by necessary implication inhibits the prosecution of such a suit. Not only is the maintenance of such a suit not expressly or impliedly forbidden but its prosecution is not contrary to a well-defined legislative policy. That the legislative policy of the State does not inhibit an action of this type but impliedly sanctions it may be inferred from the fact that the Legislature by chapter 669 of the Laws of 1937 amended section 57 of the Domestic Relations Law so as to give to either spouse a right of action against the other for wrongful or tortious acts resulting in any injury to person or property. Surely if the Legislature was convinced, as it must have been, that husband and wife might seek redress in the courts against each other for torts without involving them in perpetual controversy and litigation and without sowing the seeds of discontent and discord in the home we fail to see how such consequences may be anticipated to result from permitting brother and sister to hold each other answerable for a negligent or wrongful act. It seems to us that defendant's fears of the evils to follow such a holding are fanciful and based upon a falacious social concept.

In view of the fact that the owner of the automobile in which the litigants were riding was protected by liability insurance it can hardly be said that the prosecution of this action is a menace to family discipline or is calculated to destroy the family unit. Under the circumstances existing in this case domestic peace and tranquillity are certainly not imperiled by plaintiff's recourse to the courts for compensation for personal injuries sustained because of his sister's negligence.

While we have found no case directly in point in our own State there are authorities here and elsewhere which, in principle, justify the conclusion that this action may be maintained. In

*Crosby* v. *Crosby* (230 App. Div. 651) the mother of a minor defendant brought an action to recover for personal injuries received while riding with him in his automobile, caused by his alleged negligence. In an affidavit submitted by the plaintiff in opposition to a motion to dismiss the complaint it appeared that while defendant was not of age he earned from twenty-five dollars to twenty-eight dollars per week, paid his own living expenses, used the surplus of his wages as he saw fit, had a deposit in a bank in his own name and purchased the automobile in which he and his mother were riding when she was injured. In affirming an order denying the motion to dismiss the complaint and holding that the issue of emancipation should be litigated upon a trial this court, speaking through its present presiding justice, said: " ' An action for personal injuries resulting from negligence may not be maintained against a parent by an unemancipated minor child.' (*Sorrentino* v. *Sorrentino*, 248 N. Y. 626.) This decision is not an authority as to an emancipated child. Among the reasons assigned by the courts for denying an unemancipated child the right to recover for a personal injury inflicted by the parent is the danger of disrupting the tranquillity of the family, the interference with parental discipline and control, and the old Roman doctrine that the family in its entirety was a unit. (Harvard Law Review, May, 1930, p. 1030.) Judge POUND's dissenting opinion in *Allen* v. *Allen* (246 N. Y. 571), written prior to the *Sorrentino* case (at p. 580) says: ' Public policy is said to favor this rule of statutory construction as safeguarding the home. " It is better to draw the curtain, shut out the public gaze, and leave the parties to forget and forgive." (SETTLE, J., in *State* v. *Oliver*, 70 N. C. 60.) This doctrine has been invoked to defeat an action by an unemancipated minor child against his parent for personal injuries. (20 R. C. L. 631.) That question, however, is an open one in New York, nor has the common law been affected by any statute on the subject.' In *Hewlett* v. *Ragsdale* (68 Miss. 703) it was decided that an unemancipated child could not recover from a parent for an injury, but the opinion states: ' If, by her marriage, the relation of parent and child had been finally dissolved, in so far as that relationship imposed the duty upon the parent to protect and care for and control, and the child to aid and comfort and obey, then it may be the child could successfully maintain an action against the parent for personal injuries.' In *Taubert* v. *Taubert* (103 Minn. 247) recovery by a minor against a parent was sustained. Facts touching emancipation were proven on the trial, and that question was submitted to the jury with the instruction that if emancipation was not found, a recovery could

not be had. An emancipated minor can recover from the father on a contract. [*Stanley* v. *National Union Bank*, 115 N. Y. 122.] The courts have recognized that the reasons given for denying the right of action between a parent and an unemancipated child did not exist after majority or emancipation. The motion for the dismissal of the complaint was properly denied."

In *Spaulding* v. *Mineah* (239 App. Div. 460; affd., 264 N. Y. 589) this court held that a three-year-old grandson was entitled to recover damages for personal injuries sustained by him as the result of the negligent operation of an automobile driven by his grandmother and in which he was a passenger.

In *Beilke* v. *Knaack* (207 Wis. 490; 242 N. W. 176) a minor was permitted to sue in tort his adult brother living with him in the family of his parents.

In the recent case of *Munsert* v. *Farmers Mutual Automobile Ins. Co.* (229 Wis. 581; 281 N. W. 671) the Supreme Court of Wisconsin held that it would not sustain the converse of the rule theretofore laid down by it that an unemancipated child could not sue his parent in tort. (*Wick* v. *Wick*, 192 Wis. 260; 212 N. W. 787.) That is, it was held in the later case that a parent might sue in tort an unemancipated child.

In the *Munsert* case John Malueg, a minor six years old, was killed in a collision between a truck and an automobile in which he was riding. The truck was owned by his father and driven by his brother Emanuel, an unemancipated minor, seventeen years of age, living with John in the home of his parents.

The Death by Wrongful Act Statute of Wisconsin, section 331.03, provides that under such conditions as existed in the *Munsert* case the person who would have been liable if death had not ensued " shall be liable to an action for damages." Section 331.04 of that act further provides that any recovery shall be paid over to the parents, and, also, that " if there be no cause of action in favor of the estate of such decedent and the person or persons to whom the whole amount  *  *  *  recovered belongs  *  *  * shall be the  *  *  *  parents,  *  *  *  suit may at  *  *  * their option be brought directly in  *  *  *  their  *  *  * names instead of being brought in the name of the personal representative of such deceased person."

The plaintiff Munsert, as special administrator of the estate of the deceased minor, brought action to recover from the defendant insurance company under an indemnity liability policy issued to the boy's father, covering the automobile in which the boy was killed.

The defendant insurance company contended (1) that parents cannot bring an action against their unemancipated minor child; (2) that the parents in the case at bar were by that rule prevented from themselves bringing an action against their son Emanuel, and (3) that as such an action could not be brought by the parents directly, it could not be brought indirectly by the special administrator.

In answering these contentions the Wisconsin Supreme Court said:

"Two grounds are urged by the respondent in support of the rule (1). One is that the rule follows from the decision in *Wick* v. *Wick* (192 Wis. 260; 212 N. W. 787; 52 A. L. R. 1113), which held that a minor living in the home of his father may not sue his father. The other is that the adjudicated cases so hold on grounds other than the grounds on which the rule of the *Wick* case rests. In the view we take of the case there is no need to consider either of these grounds, because, however, it may be in other tort actions, the rules contended for do not apply to actions under the Death by Wrongful Act Statute, which is what the instant action is.

"The reason that moves us to hold that the rule of the *Wick* case does not apply to actions in tort by parents against their unemancipated minor children living in their home, is the same that impelled the court in *Wait* v. *Pierce* (191 Wis. 202; 209 N. W. 475; 210 N. W. 822; 48 A. L. R. 276) not to apply the rule later laid down in the *Wick* case, wherein the court held that a wife could sue her husband in tort. The reasons that such a suit would tend to create family discord apply as strongly in suits between husband and wife as between father and son. That tendency is recognized in the opinion in the *Wait* case, at page 216 (209 N. W. 475; 210 N. W. 822). But notwithstanding the existence of the tendency and the undisputed common-law rule that a wife could not sue her husband in tort, the court held that a wife could sue her husband in tort because statutes of the State so provide. The statutes construed as so providing are the various married women's acts referred to in the opinion of the *Wait* case. None of the married women's acts expressly declare that a wife may sue her husband, but it was held that they so provide by implication. The implication that parents may sue their minor children under the Death by Wrongful Act Statute is even more clear than that married women's acts provide that the wife may sue her husband. However it may be as to other actions in tort, we hold that under the Death by Wrongful Act Statute the instant action, which is under that statute, might have been maintained by the parents directly.   *   *   *

"It is true that section 331.03 limits the action to cases where the deceased, had he lived, would have had an action against the wrongdoer, and our conclusion above stated rests upon the inference that an action by a minor brother injured but not killed by wrongful act of his unemancipated minor brother living with the injured brother in the home of the minor's parents may be brought against the brother who committed the wrong. We have not yet in any case decided that such action lies. But we came close to so deciding in *Beilke* v. *Knaack* (207 Wis. 490; 242 N. W. 176). We there held that a minor may sue in tort his adult brother, slightly over twenty-one years of age, living with him in the family of his parents. If he may sue such brother if slightly over twenty-one years of age, living with him in his father's family, it is no great stretch from that to hold that he may sue a brother so living slightly under that age; and if so, John, had he lived, might have brought an action against Emanuel. It is said in the *Beilke* case (*supra*) at pages 493, 494 (242 N. W. 178): 'We are not disposed to extend the rule of the *Wick* case and hold that a brother may not sue a brother for a tort, even though both resided in the same home. No authority supporting defendant's contention that a brother may not sue a brother for a tort when both are members of the same family and reside in the same home has been called to our attention, and we have not been able to find any. We perceive no sound reason for holding that a brother should not be liable to a brother for a tort committed upon him.' "

As to the size of the verdict we cannot say that it is excessive. A violent collision occurred between the two vehicles involved in the accident and plaintiff was seriously injured. He lost four second front teeth in the upper jaw. The dental surgeon who treated him testified: " When I examined him it was very shortly after the accident and I found that he had a couple of swellings and contusions and that the left lateral — this tooth here (indicating) — was missing and the two central teeth, right here (indicating), had been driven up into the jawbone, and that the right lateral was very loose and driven way back into the roof of his mouth, and apparently there was a fracture of the upper jawbone. * * * The teeth were in that condition, his lips were cut, and, of course, he was bleeding quite badly. * * * The two central teeth were driven into the jawbone. * * * The eyeteeth and also the two canines were driven up to some extent. * * * I had to take out the right lateral and the two centrals. * * * Four front teeth in the upper jaw were taken out; * * * they were second teeth; * * * they are permanently gone * * * and they can never be restored with natural teeth, but he would have to

have artificial teeth in there. * * * You can't speak as distinctly or enunciate as well with artificial teeth as without them."

Obviously false teeth will not increase in size as a boy grows and necessarily there will be many replacements attendant with pain and expense.

The judgment and order appealed from should be affirmed, with costs.

HILL, P. J., RHODES and BLISS, JJ., concur; CRAPSER, J., concurs in the result.

Judgment and order affirmed, with costs.