**WILLIAM  KENNELLY, Plaintiff**

**v.**

**JOSE S. CID, Defendant**

## Civil No. 421 - 1952

## District Court of the Virgin Islands

Div. of St. Thomas and St. John
at Charlotte Amalie

## November 18, 1953

JOHN L. PHILLIPS, Esq., *for plaintiff*
EUSTACE V. DENCH, Esq., *for defendant*

MOORE, *Judge*

This suit by a real estate broker for commission fee came on for hearing with plaintiff represented by John L. Phillips, Esquire, and defendant by Eustace V. Dench, Esquire.

The circumstances out of which this action arose may be summarized as follows:

1. The plaintiff was employed by the defendant on or about February 26, 1951, to offer properties numbers 11a, 11b, 12a, and 12b Kronprindsens Gade for sale.

2. By the terms of the contract of employment, dated February 26, 1951, the above mentioned properties were to be sold for $45,000.00 net and "if sold" for that price the owner agreed to pay a commission of 10%.

3. Plaintiff secured a buyer for the said properties, but at the sum of $35,000 instead of at the contract price.

4. Defendant agreed to this new price and on March 10, 1951, entered into a contract of sale with the buyer procured by plaintiff, wherein, the buyer, after making

a deposit of $500.00, agreed to purchase the named properties for $35,000 within 90 days after tender of an abstract of said property, and the seller agreed to make the title good and marketable, in the event that it was not, within a reasonable time, but should he fail to do so, he must return the deposit money and be released from all obligations under the contract.

5. The contract of sale, prepared by the broker (plaintiff), did not include any agreement as to commission fee, although the printed form used provided therefor, and the evidence indicates that nothing was ever said about it.

6. The contract of sale was signed by the broker, the purchaser and the seller. The seller's wife, who has a dower interest in these properties, did not sign and apparently was not a party to the agreement.

7. The transaction, however, was not consummated and the buyer's $500 deposit was returned by defendant who declined in writing to go through with the deal because of the price. Thereafter, the seller refused to pay a commission fee to plaintiff.

Plaintiff contends that he is entitled to his commission on the sale negotiated since his services as broker were completed when he secured a purchaser acceptable to the seller, and the fact that the sale failed does not deny him of his right to commission earned. Plaintiff claims that the sale failed through no fault of his or of the purchaser but directly as a result of the refusal of the seller, his principal, to go through with the contract because he received an offer of a better price subsequent to his entering into the contract of sale with plaintiff's purchaser.

Plaintiff, further, contends that he is entitled to compensation at the rate of 10% of the selling price agreed upon ($35,000) since that was the percentage specified in the original contract of employment and was orally reaffirmed by defendant in connection with the negotiated

sale. (It might be noted here that no amount of commission is mentioned in the new $35,000 contract).

Defendant, on the other hand, asserts that he had agreed to pay a commission only if he received $45,000 net; that he never agreed to pay a commission on the reduced sale price; that in the contract negotiated and prepared by the plaintiff, no mention was made of commission to the plaintiff-broker; that he is not liable for commission on his refusal to go through with the contract of sale for it was a contingent contract and the contingency failed, thereby releasing him from all obligations thereunder; and that he could not have fulfilled the contract even if he had been willing, because of a defect in the title which he had not been able to clear.

The primary controversy in this case is not a dispute as to facts but as to the legal rights and obligations of the parties flowing from the relationship of broker and principal.

Plaintiff and defendant entered into a contract whereby plaintiff agreed to find a purchaser for defendant's property at a net price of $45,000 and defendant agreed to pay plaintiff a commission of 10% on that sale price. The plaintiff, however, failed to procure a purchaser, willing to buy at $45,000 according to the terms of this contract, but did obtain a purchaser, willing to buy at $35,000. Defendant-seller agreed to accept this figure and entered into an agreement with the purchaser. This contract of sale was never consummated due to the default of the defendant.

The question for the Court is whether under this set of circumstances the broker is entitled to a commission, and if so, how much?

■ It is settled by the overwhelming majority of authorities that, in the absence of any stipulation to the contrary, a real estate broker becomes entitled to his commission when he finds a buyer acceptable to the seller and

there is a meeting of the minds and a binding contract is entered into. 8 Am. Jur. — Brokers, sec. 168, 184; 12 C.J.S. — Brokers, sec. 84.

It is argued by counsel for defendant that even though a contract was entered into by the parties, it was never consummated, and that unless consummated defendant is released under the terms of the contract from all obligations, including payment of commission to the broker.

■ ■ Counsel for defendant fails to distinguish between the contract of employment and the contract of sale. While the broker did sign the contract of sale, he signed as broker and witness and not as a party to the contract which had only to do with the sale and made no reference to broker's fee or other commission. Therefore, the defendant could not be released from any obligation to the broker under that contract. The only contract between broker and seller is the contract of employment. Now, this original contract of employment did stipulate the percentage of commission if a specific price were obtained, but that contract became inoperative when the broker failed to find a purchaser at $45,000. The original contract of employment having become inoperative does not mean that there was no contract of employment or no agreement to pay a commission for the services of plaintiff, as argued by counsel for defendant. The defendant having accepted a purchaser procured by the broker, thought at different terms from those originally agreed upon, cannot now be heard to say that he did not agree to pay any commission whatsoever on the reduced price which he accepted.

In the case of Goodman v. Marcol, 261 N.Y. 188, 184 N.E. 755, 88 A.L.R. 714, the court cited another New York case as authority for the principle that "If the efforts of the broker are rendered a failure by the fault of the employer, he does not lose his commissions. This upon the familiar principle that no one can avail himself of the

non-performance of a condition precedent, who has himself occasioned its non-performance."

On a similar set of facts as in the above case, the Supreme Court of the United States in the case of Kock v. Emmerling, 22 How. 69, 16 L. Ed. 292, stated that "Where the vendor is satisfied with the terms, made by himself, through the broker, to the purchaser, and no solid objection can be stated, in any form, to the contract, it would seem to be clear that the commission of the agent was due and ought to be paid. It would be a novel principle if the vendor might capriciously defeat his own contract with his agent by refusing to pay him when he had done all that he was bound to do."

It is clear, in the case before us, that the broker performed services for the defendant at his request, that the defendant accepted the purchaser brought by the broker, and that the sale failed as a result of defendant's refusal to go through with the contract. Therefore, it is the opinion of the Court that the principle laid down in the cases cited is applicable to the circumstances.

■ After entering into an agreement to sell and after accepting the price offered by plaintiff's customer, defendant could not back out of that agreement without incurring liability to the broker. Neither the seller nor the buyer could release the seller from his obligation to pay the broker for his services which were fully performed. The general rule according to American Jurisprudence, vol. 8, page 200, is that "Unless the broker consents thereto or acquiesces therein, the subsequent modification or cancellation of a contract concluded between the principal and a customer produced by the broker does not affect his right to a commission."

■ It is well established under the law that a broker's right to commission is not dependent upon the consummation of the agreement or sale. 8 Am. Jur. 1094, 12 C.J.S.

183, 185. The right of a broker to compensation accrues on the completion of negotiations, when a binding contract is entered into between the principal and customer. That is, a broker's duty is fully performed and his commission earned when there is a meeting of the minds of his employer or principal and the purchaser procured by him. See the case of Wallace v. Zinman, 200 Cal. 585, 254 Pac. 946, 62 A.L.R. 1341, where the court relied on the authority of a previous California case, Purcell v. Firth, 175 Cal. 746, 167 Pac. 379, which held that "An agreement to pay a commission on a sale 'when the sale is consummated' did not make consummation of the sale a condition precedent to recovery of the commission, but that the commission was earned when a purchaser able and willing to buy was produced, regardless of whether or not the sale was ever consummated."

Nor is the right of the broker to his commissions altered by the fact that the sale failed through the default of the broker's principal, whether such default is due to the refusal of the principal to sell or the inability of the principal to convey good title.

A Maine case, Hartford v. McGillicuddy, 68 Atl. 860, 16 L.R.A. (n.s) 1131, holds that, "If a real estate broker procures and produces a purchaser ready, and willing, and able to complete the purchase on the authorized terms, and through the fault of the owner, the sale is not consummated, the commission is due."

Another state case in point is that of Sturgeon v. Culver, (Kan.) 124 Pac. 419, where the court held that "The fact that he (the seller) did not hold complete title, or any title, to the land is immaterial, if the services contracted for have been performed by his agent. It is no defense to an action brought by an agent against his principal to recover a commission for negotiating a sale of land that the principal does not hold title to the land."

The United States Supreme Court in the case of Dotson v. Milliken, 209 U.S. 237, 28 S. Ct. 489, 52 L. Ed. 768, passed on the question of the right of a broker to commission where the sale failed through the fault of his principal. The Supreme Court upheld the instructions of the trial court to the jury to the effect that a broker employed to find a purchaser for the whole or any considerable part of a tract of coal land is entitled to his agreed commission, where he finds a purchaser for 10,000 acres, and the sale fails because of the inaccuracy of the owner's representations to the broker that a railway company had consented or agreed to construct a branch railroad into such lands.

It is, therefore, the opinion of this court that the broker is entitled to compensation for the services he performed at the request of defendant, and that the fact that the contract of sale was never consummated due to the default of defendant cannot defeat the right of plaintiff to commission earned. It might be mentioned that defendant's ability to clear the title to the property involved herein is demonstrated by the fact that the suit instituted by defendant for the purpose on October 23, 1952, was carried by him to fruition subsequent to the cancellation of the sale, as shown by the court record in Civil No. 366 - 1952 wherein title to Nos. 12a and 12b Kronprindsens Gade was quieted by judgment entered June 4, 1953.

The Court being of the opinion that plaintiff is entitled to a commission now has to determine the second question: In the absence of agreement as to rate of commission, how much is the broker entitled to?

■ Since the first contract of employment does not govern the transaction on which the broker is entitled to recover, and since there was no agreement as to rate of commission on the reduced sale price, the law implies a promise on the part of the employer to pay the usual and customary commission.

The Court is of the opinion that there is no well defined customary broker's commission in the Virgin Islands and none has been shown to the Court. In the absence of a customary commission, the broker is entitled to reasonable compensation. 8 Am. Jur. 1070, 12 C.J.S. 170. Numerous cases uphold the right of a broker in these circumstances to a reasonable compensation. See Scully v. Williamson, (Okla.) 108 Pac. 395, 27 L.R.A. (n.s.) 1089, where it was held that when a real estate broker sues to recover compensation for services rendered in procuring a purchaser under a contract which fails to fix his rate of compensation, he is entitled to recover a fair and reasonable compensation for the services rendered in compliance with his contract. Also see Shaller v. Johnson - McQuiddy Cattle Co., Tex. Civ. App., 189 S.W. 553, as holding that, "Even though it is stipulated in the listing that a commission will be paid only if the property is sold at a specified price, where the broker finds a purchaser to whom the owner sells for less than the listed price, he is entitled at least to reasonable compensation for his services." (Note 73, 12 C.J.S. 170).

In determining what is reasonable compensation under the circumstances of a given case, the weight of authority is to the effect that the accomplished as well as the time and effort expended by the broker are to be taken into consideration. Nelson v. Reinhart, 47 Nev. 246, 219 Pac. 554, rehearing denied 47 Nev. 246, 221 Pac. 521; In re Kayser's Estate, 190 Wis. 189, 208 N.W. 895; Brady v. Rickey, Tex. Civ. App., 187 S.W. 508.

In the case of Nelson v. Reinhart, supra, the court had before it the following circumstances: the seller had requested services of the broker in procuring a purchase for his lands, livestock and other peprsonal property; broker procured a purchaser for said property within the time and at a price suggested by the seller; through broker's ef-

forts seller effected a sale at $215,000; there was no agreement between the parties as to compensation; broker was demanding 10% as a reasonable commission for his services. The court held that where there is no agreement as to the rate of compensation to be allowed a broker for services to be rendered, and no usual or customary rate prevails at the time and place from which to determine the value of the services, the law implies a promise to pay what his services were reasonably worth. The court then stated, citing Mayhew v. Brislin, 13 Ariz. 102, 108 Pac. 253, that "The amount of compensation of a real estate broker in a case such as this, where there is no contract or usage fixing the rate, is measured by the results attained or the end accomplished, and the time employed or the labor expended is not the only thing to be considered." After so stating the law, the court refused to set aside the verdict of the jury which counsel argued was calculated on the basis of 5% less credits. The court said that 5% of the selling price may have been much above or much below the quantum meruit but that the jury had before it the proper considerations and it was within its province to weigh these considerations.

Counsel for plaintiff has presented no evidence as to time consumed or labor expended by plaintiff in securing a buyer acceptable to defendant, and since, in accordance with the cases last cited, time and effort expended are not the only factors to be taken into consideration in determining reasonable compensation, the Court gives consideration to the fact that the negotiations did not conclude in a sale. While, as we have stated in the beginning of our opinion, a broker's right to commission is not dependent upon consummation of the contract of sale, it is our opinion that the end accomplished may be taken into consideration, as in Mayhew v. Brislin, supra, in fixing the amount of compensation.

In view of all these considerations, and there being no proof of excessive time or effort spent by the broker, and also taking into consideration the rate of commission throughout the United States on sales of this size and amount, we conclude that 2 1/2% of the agreed purchase price or $875.00 is reasonable compensation in this case.

Judgment may be drawn in favor of the plaintiff in the amount of $875.00 plus attorney's fees of $150.00.