RUPP, Appellant, v. TRAVELERS INDEMNITY COMPANY and another, Respondents.

*May 1—June 5, 1962.*

For the appellant there was a brief by *Silverstein, War-shafsky & Rotter,* attorneys, and *Theodore Warshafsky* of counsel, all of Milwaukee, and oral argument by *Theodore Warshafsky.*

For the respondents there was a brief by *George D. Young,* attorney, and *John H. Ames* of counsel, both of Milwaukee, and oral argument by *Mr. Ames.*

HALLOWS, J.   Two basic questions are raised: (1) Did the trial court err in not admitting hospital records and records of Dr. Krueger, an attending orthopedist, in evidence, and (2) did the trial court err in failing to grant a new trial in the interest of justice or on the ground the damages awarded were inadequate, inconsistent, or motivated by perversity?

On the trial, the hospital records of Johnson's Emergency, St. Luke's, and St. Joseph's Hospitals were offered in evidence by the plaintiff as entries in the usual course of business under sec. 327.25, Stats.[1]   The parties had stipu-

---

[1] "327.25   ENTRIES IN THE USUAL COURSE OF BUSINESS.   Entries on account books, cards, sales slips, loose-leaf sheets or in a book or other permanent form (including those mentioned in secs. 327.24 and 328.24) in the usual course of business, contemporaneous with the transactions to which they relate and as part of or connected

lated these records were authentic in that they were the records of the respective hospitals containing all the information with reference to the plaintiff, were made in the usual course of business, and had been under proper custodial care. The plaintiff did not call any doctor, nurse, intern, or employee of the hospitals, who had made the various entries, to identify or verify his entries, or offer to show that such persons were beyond the jurisdiction of the court or insane. Admissibility of the hospital records was denied on the ground the proper foundation required by sec. 327.25 was not made, the trial court relying upon *Beilke v. Knaack* (1932), 207 Wis. 490, 242 N. W. 176. *Beilke,* the only previous case in this state construing sec. 327.25 with respect to hospital records, held it was error to admit such records without the testimony of the entrants or the showing they were beyond the jurisdiction of the court or insane.

The plaintiff contends the *Beilke* rule is unsound under modern conditions and the hospital records should have been admitted on the reasoning of *Sundquist v. Madison Rail-*

with such transactions, made by persons authorized to make the same, may be received in evidence when shown to have been so made upon the testimony either of the person who made the same, or if he be beyond the jurisdiction of the court or insane, of any person having custody of the entries, and testifying that the same were made by a person authorized to make them in whose handwriting they are, and that they are true and correct to the best of his knowledge and belief. In case such entries are, in the usual course of business, also made in other books and papers as a part of the system of keeping a record of such transactions, it shall not be necessary to produce all of the persons who were engaged in the making of such entries; but before such entries are admitted the court shall be satisfied that they are genuine and in other respects within the provisions of this section. This section shall apply to all entries made in the regular course of business whether or not they are the records of one of the parties to the action or relate to transactions between such parties and whether or not the party against whom they are used had any knowledge of or acquiesced in the making of such entries and in criminal as well as in civil cases or proceedings."

*ways Co.* (1928), 197 Wis. 83, 221 N. W. 392, and on the ground of public policy. *Sundquist,* which was decided four years before *Beilke,* allowed in evidence a doctor's diagnosis, although based in part on hospital records which were not offered or in evidence. Underlying this decision is the concept the hospital records, although hearsay, were trustworthy as a basis for a medical conclusion because one in a position to know accepted and relied upon them in the important daily affairs of mankind.

In the instant case, Dr. Ullrich related his diagnosis, based in part upon his reading of hospital records, without objection. But it does not necessarily or logically follow that, therefore, all hospital records were admissible. The reason for the distinction is grounded in the language of the statute. Sec. 327.25, Stats., as an exception to the hearsay rule, has its origin in 1839 in the territorial statutes (see 1839 Territorial Stats. of Wis., An Act Concerning Testimony and Depositions, sec. 80). Its legislative history, and that of sec. 327.24, is traced in an article entitled, "Admissibility of Business Entries," Skogstad and Koppa, 1958 Wisconsin Law Review, 245. Suffice it to say, the statute has been enlarged and liberalized over the years and the cases interpreting it have ranged from strict construction[2] to a liberal one in *Stella Cheese Co. v. Chicago, St. P., M. & O. R. Co.* (1946), 248 Wis. 196, 21 N. W. (2d) 655, wherein the court stated that, like the federal statute[3] on shopbook rule, sec. 327.25 should be liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it is aimed. However, *Stella* involved a copy of the original record which was admitted in evi-

---

[2] *Kelley v. Crawford* (1901), 112 Wis. 368, 88 N. W. 296; *Milwaukee Trust Co. v. Warren* (1902), 112 Wis. 505, 87 N. W. 801; *Bazelon v. Lyon* (1906), 128 Wis. 337, 107 N. W. 337; *Estate of Kayser* (1926), 190 Wis. 189, 208 N. W. 895; *Markgraf v. Columbia Bank* (1931), 203 Wis. 429, 233 N. W. 782.

[3] 28 USCA, p. 475, sec. 1732.

dence upon identification by the entrant and after a proper foundation had been laid. It is in this respect the language of the court must be read and is not inconsistent with *Beilke*.

The federal business-entry statute for admissibility of a writing or record in form of an entry in a book or otherwise made as a record of an account, transaction, occurrence, or event, requires only that the entry be made in the regular course of business and made contemporaneously or within a reasonable time of the fact recorded. All other circumstances surrounding the making of the entry affect its weight but not its admissibility. However, sec. 327.25, Stats., expressly requires original entries in an account book be shown to have been made in the regular course of business contemporaneously with the transaction by persons who made the entries, or if beyond the jurisdiction of the court or insane, by the custodian of the records identifying and verifying the entries.

This section also recognizes some modern business practices by excusing the necessity of producing all the persons making entries when in the usual course of business such entries are also made in other books and papers as a part of a system of keeping a record of such transaction. This latter part of the statute does not apply to hospital records of patients because of the nature and manner in which such records are kept.

It is true, the federal rule has generally been interpreted to admit into the record the hospital records. See cases in the annotation, 28 USCA, p. 480, sec. 1732, note 18. The policy basis for considering hospital records as an exception to the hearsay rule is well stated in 6 Wigmore, Evidence (3d ed.), p. 36, sec. 1707. In summary, Wigmore states the medical records of patients in a modern hospital contain a circumstantial guaranty of trustworthiness because of the manner and purpose for which they are kept and the reli-

ance placed upon them by the doctors and nurses in the affairs of life and death, and also there is a practical necessity for the admission of such records because the requirement of calling on individual doctors, nurses, and attendants who have co-operated in making the record, would seriously interfere with the hospital administration. This case is illustrative of the practical-necessity argument since some 75 persons made the entries in the hospital records. It would be an almost impossible task and, if not, an impractical one, both from the standpoint of hospital administration and of the administration of justice under our trial procedure, to call as witnesses so large a number of persons, many of whom, no doubt, would be unable to recall any independent recollection of his particular entry other than it was in his handwriting and was true.

The effect of the contended rule would shift the issue from admissibility to credibility and place a greater burden on the party attacking the trustworthiness of the entries. For a discussion of the problem as applied to medical evidence, see Arnold, Medical Evidence in Wisconsin, 39 Marquette Law Review (1956), 289, and a current article by Swietlik, Hearsay Rule in Wisconsin, Vol. II, No. 2, Wisconsin Continuing Legal Education, p. 1 (April, 1962), relating to business entries as exception to the hearsay rule, advocating not only the repeal of sec. 327.24, Stats., as having outlived its usefulness but also the amendment of sec. 327.25 to conform more closely with modern statutes.

While we recognize the force of the plaintiff's argument, we cannot either construe or modify sec. 327.25, Stats., as urged. We cannot interpret the section, no matter how liberally, so as to excise from the statute the express requirement that entries must be identified by the testimony of the entrants if it is not shown they are beyond the jurisdiction or insane. There are limits and guidelines which this court must recognize in ascertaining the intent of the

legislature in its enactments even though we might feel the statute has outworn its usefulness or is no longer compatible with the realities of life. Nor can this court change a statute dealing with procedure and practice by the exercise of its rule-making power on appeal but only in compliance with sec. 251.18, which provides a statute relating to pleading, practice, and procedure may be modified or suspended by rules promulgated after the court has held a public hearing with reference thereto upon notice by publication for three successive weeks in the official state paper. *Ozaukee Finance Co. v. Cedarburg Lime Co.* (1954), 268 Wis. 20, 66 N. W. (2d) 686. In the process of invoking its rule-making power, the court has customarily, at least recently, submitted the problem initially to the judicial council of Wisconsin for a study and report of the merits of a proposed change. We believe the problem presented needs study and will call it to the attention of the judicial council.

The trial court was likewise correct in not admitting the records of Dr. Krueger. Being dead, he was obviously beyond the jurisdiction of the court. But there was no custodian of his records who identified and verified the entries. Thus the requirement of sec. 327.25, Stats., was not met and the stipulation did not go to the extent of waiving it. An additional ground for inadmissibility was the fact some of the doctor's entries were illegible and the trial court and the attorneys were in dispute as to their meaning. The trial court took the position the doctor's records in general also contained findings and conclusions, which, if received, would become part of the record without the defendants' having an opportunity to cross-examine the doctor on the very matters which were in issue.

The last contention of the plaintiff concerns the amount of damages. We have examined the transcript of the testimony. No good purpose would be served in relating the testimony and all the complaints of, and the medical treat-

ments given to, the plaintiff who presented two distinct areas of injury, *i.e.*, an overt psychoneurosis finding expression primarily in her upper extremities and a low back instability which led to surgery and a spinal fusion. The defendants claim the psychoneurosis had its origin in prior personality defects which manifested themselves long before the accident and the accident was too minor to sensitize the back condition, and in any event the spinal surgery and the resulting disability would have been otherwise necessary. The plaintiff contends here, as at the trial, the pre-existing psychoneurotic condition was exaggerated by trauma and the pre-existing lumbosacral anomaly was sensitized and made symptomatic by the accident. On the conflicting testimony, the jury could have disbelieved the plaintiff concerning many of her subjective symptoms. It was likewise within the province of the jury to evaluate how much of the medical expenses, pain and suffering, loss of wages, and disability existed and was caused by the accident. The case presented typical jury questions.

An ingenious argument is made by the plaintiff that the jury in awarding $2,000 for medical expenses, when the proof showed $3,282, determined approximately 61 percent of the medical expenses was caused by the accident and disallowed 39 percent because of its disbelief in a causal relationship between the psychoneurosis and the trauma. From this proposition, the plaintiff argues the jury, to be consistent, should have found on the same ratio of causation approximately $2,400 for loss of wages and when the total sum of $4,400 for specials is compared with the $5,000 awarded for pain and suffering and disability, it is obvious this amount is unreasonable and inadequate. From this assumption, it is also argued the verdict was perverse and if not perverse, it was unjust and against the great weight of the credible evidence and the court should have granted a new trial in the interest of justice or, in the alternative,

fixed a reasonable amount of compensation, offering an option under the rule of *Powers v. Allstate Ins. Co.* (1960), 10 Wis. (2d) 78, 102 N. W. (2d) 393.

The difficulty with the plaintiff's arguments are her assumptions. While the answers in the verdict must be consistent, such consistency in respect to various elements of damages cannot be tested by the mathematical standard used by the plaintiff in her theory of what the jury did with the causal-relationship issue. There is no requirement that a jury must arrive at a conclusion with mathematical certainty or that each item of damages awarded must bear the same mathematical ratio to the evidence. The jury obviously believed that not all the medical expenses were due to the accident and likewise that all the loss of time from work was not necessarily a result of the accident, but there is no necessary percentage relationship between the amount of loss of time and the amount of medical expenses, or between the amount of medicals and the amount of pain and suffering. Each may bear a different relationship on the facts to causation and each has its own standard for determining and evaluating its monetary compensation.[4]

The causal connection of the plaintiff's permanent disability in her low back was in dispute and at issue in the medical testimony. The medical testimony was in sharp conflict in respect to the psychoneurosis, its extent and its cause, and in respect to the necessity of surgery for the prior condition of the lower back. The testimony of the plaintiff, her family, and friends concerning her pain and suffering and changed personality was for the jury to weigh and believe. The jury cannot be charged with prejudice because it did not accord the degree of relief the plaintiff thought it should award her. A finding of a larger amount

[4] For a recent article on the subject, see Ghiardi, Personal Injury Damages—Pain and Suffering, Vol. II, No. 2, Wisconsin Continuing Legal Education, p. 21 (April, 1962).

of damages might be made by another jury, but speculation and hope are no grounds for a new trial if the amount awarded by this jury was within the realm of reason in view of the evidence. The amount awarded was conservative but, on the record, does not seem to us to be unreasonable or result in an inadequacy which demands of this court the application of the *Powers* rule. Likewise, there is no call for the exercise by this court of its power to grant a new trial in the interest of justice under sec. 251.09, Stats.

*By the Court.*—Judgment affirmed.