STELLA CHEESE COMPANY, Appellant, vs. CHICAGO, ST. PAUL, MINNEAPOLIS & OMAHA RAILWAY COMPANY, Respondent.

*December 6, 1945—January 8, 1946.*

For the appellant there were briefs by *Daniel I. D'Amico* of Cumberland, attorney, and *T. Frank Quinn* and *McMeekin & Quinn,* all of St. Paul, Minnesota, of counsel, and oral argument by *Mr. T. Frank Quinn* and *Mr. D'Amico.*

For the respondent there was a brief by *J. F. Baker* and *John E. Krueger,* both of Milwaukee, and oral argument by *Mr. Krueger.*

FOWLER, J.   The plaintiff sues to recover damages for an alleged loss of Italian cheese delivered by the plaintiff to the defendant railroad at Clayton, Wisconsin, to be shipped to the plaintiff at Brooklyn, New York.   The case was tried to a jury.   At the close of the testimony the defendant moved for a directed verdict.   The trial judge withheld ruling upon the motion and submitted the case to the jury on a special verdict which the jury returned so answered as to entitle the plaintiff to judgment in its favor if a jury question was raised by the evidence.   The trial judge finally held that the defendant's motion should be granted and entered judgment dismissing the complaint.

The plaintiff claims a loss in shipment of cheese of specified amount and value.   The defendant denies any loss at all, but it is undisputed that there was some loss.   The defendant claims that some loss being proved, the plaintiff failed to prove either the amount of the cheese loaded into the car at Clayton or the amount delivered at Brooklyn.   The trial judge was satisfied with the proof of what was taken out of the car and delivered, and we think properly so, but was of opinion that there was no competent evidence of the amount loaded in.

The plaintiff contends that the bill of lading issued by the Railway Company is itself *prima facie* evidence of the receipt

for shipment of the amount of goods stated therein, and that introducing the bill threw upon the defendant the burden of producing evidence to show that the amount stated was not in fact received. We cannot sustain this contention. The shipment being in interstate commerce, the federal acts, 49 USCA, secs. 101, 102, govern. The instant bill contains the notation "Shipper's Load and Count." Sec. 101 authorizes this recital. The federal decisions, of course, govern the construction of the statutes. There are many to the effect that the carrier is not bound by the recitals as to the amount of goods received, but no federal court decision is cited to us, and we find none, to the precise point whether the burden of proof is on the shipper to show the amount actually loaded into the car. There is, however, an interstate commerce commission decision, *Louisiana State Rice Milling Co. v. Morgan's L. & T. R. R. & S. S. Co.* 34 I. C. C. 511, 513, where it is stated that the statute "has the effect of placing the burden upon the shipper who loads . . . to prove that the amount specified was loaded and that a less amount was taken out of the car by the consignee." While this is not a court decision, we think it is of more weight in determining proper statutory construction than any state court decision, and we see no point in citing such decisions which are both pro and con. Par. 8 of the syllabi to *Strohmeyer & Arpe Co. v. American Line S. S. Corp.* (2d Cir.) 97 Fed. (2d) 360, is to the effect that as between consignor and the carrier recitals in the bill of lading as to goods shipped raise a rebuttable presumption that "such goods" were delivered for shipment. It is stated in the opinion, p. 361, that "It [the bill of lading] imports a receipt of goods to be transported . . . but it extends only to goods actually received. . . . Parol evidence is admissible to show that only part of the shipment was received and the missing cases never received." This seems to support the conclusion of the interstate commerce commission.

The bill of lading not being *prima facie* evidence of what was loaded into the car we take up consideration of the plain-

tiff's evidence to that point. The cheese consisted of three lots, one taken from plaintiff's local warehouse at Clayton and two from lots brought from Amery and Cumberland to Clayton by trucks and loaded directly from the trucks into the car at Clayton. The defendant urges that there was no evidence at all of the amount of these two lots, but this is immaterial as it is undisputed that all of the cheese in these two lots actually was delivered.

So the only loss was of cheese in the one lot taken from the Clayton warehouse. This lot was taken from the warehouse to the car in four or five truckloads. A Mr. Pricco had charge of the shipping of the cheese. He testified as to the number of loaves in each carton, to the weighing of each carton as it was loaded onto the trucks to be taken to the car, and the calling off of the weight of each carton to him as it was weighed, and his immediately putting down the weight called on a tally sheet. The number of loaves in the cartons was uniform, and the tally sheet thus showed the number of cartons and inferentially the number of loaves, the weight of each carton and the total weight of the cheese to be shipped. Pricco also testified that the cheese loaded onto the trucks was loaded into the car, but as he went to the car with only two truckloads, he was competent to testify only as to the two loads he accompanied. He testified that he made the bill of lading from the tally sheet and took the sheet to the plaintiff's local office. Mr. Caudy, office manager of plaintiff, testified that he made out a loading manifest from this tally sheet by transferring the weight of each carton on to the manifest. He further testified that two copies of this manifest were made by girl clerks in the office and that the original or one of the copies was kept at the local office, one sent to the Chicago office of the plaintiff, and one sent to the plaintiff's Brooklyn office. Only one manifest was produced at the trial. As it was not in the handwriting of Caudy, it was not the original from which the girls made the copies. The plaintiff, after search, was unable to find the original manifest or the tally sheet in any of its offices and

what disposition of them was made does not appear. Caudy made the original manifest from the tally sheet. From this manifest or one of the copies he made an entry in a shipping-record book kept by the company of all shipments from Clayton. The entry therein of the instant shipment shows the total number of loaves and the total weight of the cheese shipped. The entry was made at the time of the shipment or shortly thereafter. The entry was made and the book kept in the regular course of plaintiff's business. The loading manifest and the copies thereof were also so made. The trial court refused to admit this shipping record in evidence. If it was receivable a *prima facie* case of the amount of cheese shipped was made and as there is no dispute as to the value of the cheese the judgment of the court was erroneous.

Whether the entry in the record book is admissible depends on whether sec. 327.25, Wis. Stats., makes it so. Before the enactment of this statute that entry was inadmissible. *Kelley v. Crawford,* 112 Wis. 368, 371, 88 N. W. 296. The statute first made its appearance in sec. 4189, Stats. 1898, Sanborn & Berryman's Anno. A note in those statutes in connection with the section says:

"Entries in the usual course of business, made in the books or sheets of factors, warehousemen, shippers, railway companies and others, are admissible by the very necessity of the case. The above, except the first sentence, was written by the revisers of 1898 in the hope that it provides a rule for their admission while sufficiently guarding the rights of the parties."

Ch. 156, Laws of 1925, and sec. 85, ch. 523, Laws of 1927, added to the statute the provision declaring loose-leaf sheets admissible. Of this statute it is said in *Feuchtwanger v. Manitowoc Malting Co.* (7th Cir.) 187 Fed. 713, 718:

"Under the Wisconsin statutes we find there is no ground for holding the evidence [items of cost] inadmissible . . . and that (the statutory conditions being fulfilled, as they fairly

were in this case) 'the question of untrustworthiness would have to be advanced affirmatively by plaintiffs in error."

This is the only case besides the *Kelley Case, supra,* and *Markgraf v. Columbia Bank of Lodi,* 203 Wis. 429, 233 N. W. 782, in which sec. 327.25, Stats., has been cited. In the two last cited the entries involved were rejected because not shown to have been made in "usual course of business." Here there seems no question of their having been so entered and that the other statutory requisites for their admission were proved. A federal statute, 28 USCA, sec. 695, is of like import. Of the federal statute above referred to it is said in *Palmer v. Hoffman,* 318 U. S. 109, 115, 63 Sup. Ct. 477, 87 L. Ed. 645, which renders admissible any writing or record of any transaction made in regular course of business it should be "liberally interpreted so as to do away with the anachronistic rules which gave rise to its need and at which it was aimed." Note to 28 USCA, sec. 695. Many cases under the federal statute are cited and stated in this note. Our statute should also receive a liberal interpretation to carry out its purpose. And interstate commerce being involved it would seem likely that the federal statute is itself applicable and controlling although that is perhaps for the federal courts to decide. The federal decisions are at least relevant and persuasive.

It is to be noted that the federal act and the statutes of several states are the result of some proposals for reform of the law of evidence suggested by Edmund M. Morgan, Edson R. Sutherland, and John H. Wigmore and others, made in a booklet entitled "The Law of Evidence," issued by the New Haven-Yale University Press in 1927:

"To the end that the proof of business transactions might be harmonized with current business practices the commonwealth fund research committee, consisting of judges, practitioners, and law teachers, after five years of extensive research, drafted and recommended for adoption in the states a model

business entries act." 32 Ill. Law Review, 348. The proposed act is there given as follows:

"Any writing or record, whether in the form of an entry in a book or otherwise, made as a memorandum or record of any act, transaction, occurrence or event, shall be admissible in evidence in proof of said act, transaction, occurrence or event, if the trial judge shall find that it was made in the regular course of any business, and that it was the regular course of such business to make such memorandum or record at the time of such act, transaction, occurrence or event or within a reasonable time thereafter. All other circumstances of the making of such writing or record, including lack of personal knowledge by the entrant or maker, may be shown to affect its weight, but they shall not affect its admissibility. The term business shall include business, profession, occupation and calling of every kind."

See also vol. 47, Harvard Law Review, 1044, and American Law Institute, Model Code of Evidence, rule 514, p. 270. The federal statute, 28 USCA, sec. 695, passed in 1936, is in exact accord with the proposed statute above quoted. Our sec. 327.25, Stats., long antedates the proposal of the committee. The amendment of our statute in 1927, *supra,* extending its application, places it in substantial accord with the federal act.

As above stated, the trial judge refused to receive the shipping book in evidence. It appears that he did so without sec. 327.25, Stats., being called to his attention and apparently without consideration of its effect on the admissibility of the entry, and without consideration of the fact that the entry was made in the regular course of business of the plaintiff. As it undisputably was so made the only facts as to its admissibility left for his consideration were whether the court was satisfied that the entry "was genuine and in other respects within the provisions" of this section. This fact was not considered by him and because it was not we conclude that the judgment should be set aside and a retrial of the case ordered.

*By the Court.*—The judgment of the circuit court is reversed, and the cause remanded with directions to set aside the judgment and for a new. trial in accordance with the opinion of this court.