ALLIS-CHALMERS MANUFACTURING COMPANY, Appellant, v. EAGLE MOTOR LINES, INC., Respondent.*

*No. 99. Argued May 1, 1972.—Decided June 6, 1972.*
(Also reported in 198 N. W. 2d 162.)

* Motion for rehearing denied, with costs, on September 6, 1972.

For the appellant there was a brief and oral argument by *Charles Saggio* of Milwaukee.

For the respondent there was a brief by *Kluwin, Dunphy, Hankin & Hayes* of Milwaukee, and oral argument by *Gerald T. Hayes*.

ROBERT W. HANSEN, J.   This dispute between a shipper and a carrier as to who is responsible for goods damaged in transit involves the legal question as to who has the burden of proof as to certain aspects and at certain stages of the action.

*The general rule.*

The general rule, in the absence of special contract, is that the liability of a common carrier for injury to property in transit is that of an insurer.[1] The sender need not establish how, when or where the damage in transit occurred. It follows that the mere proof of the delivery of the goods to the carrier in good condition, and of their arrival in damaged condition, makes a prima facie case against the carrier.[2]

*Preparation and packing.*

In addition to establishing that the goods he shipped arrived in damaged condition, the shipper is required to establish that they were delivered to the carrier in good condition.[3] The general rule as to shipper responsibility for preparation and packing has been stated to be: "Improper packing or preparation for shipment ordinarily constitutes such a fault on the part of the shipper as will relieve a common carrier from its almost absolute common-law liability for goods it undertakes to carry, at least where the defect is latent and not apparent upon ordinary observation. . . ."[4] If "latent" is used as a synonym for "hidden" or "concealed," we accept that statement of the rule. So did the trial court, instructing the jury here that the burden of proof was on A-C, the shipper, to prove the panel had been sufficiently crated and the burden of proof was also on A-C to prove any defect in the packing or crating was not concealed.

[1] *Laridaen v. Railway Express Agency, Inc.* (1951), 259 Wis. 178, 180, 47 N. W. 2d 727.

[2] 14 Am. Jur. 2d, *Carriers*, p. 134, sec. 620. *See also: L. L. Richards Machinery Co. v. McNamara Motor Express, Inc.* (1959), 7 Wis. 2d 613, 617, 97 N. W. 2d 396.

[3] 14 Am. Jur. 2d, *Carriers*, p. 133, sec. 619.

[4] 14 Am. Jur. 2d, *Carriers*, p. 59, sec. 529. *See also: Klauber v. American Express Co.* (1866), 21 Wis. 21, 24.

*"Apparent good order."*

What makes the trial court instruction on this point inappropriate and incorrect is that, in the case here on review, the carrier, Eagle, on its bill of lading noted that the shipment was received "in apparent good order." Where the carrier thus acknowledges receipt in apparent good order or good condition, the burden of proof shifts to the carrier in seeking to establish that the goods, when received, were not in good order. This rule has been stated as follows: "A notation or statement in a bill of lading that the goods were received by the carrier in apparent good order or condition makes a prima facie case, and the burden is then on the carrier to prove that they were not in good condition when received . . . ." [5] The trial court instruction put the burden of proof as to defect at the time of shipment on the shipper. Because of the "in apparent good order" notation in the bill of lading, the instruction should have placed the burden of proof on the carrier.

*Hidden or concealed defects.*

There is a sharply limited exception to the "in apparent good order" statement in the bill of lading creating a presumption of receipt in good order. The presumption can be overridden if the carrier establishes the defect it claims existed was a hidden or concealed defect, but the burden is on the carrier to overcome the presumption. In the case before us, there went to the jury the testimony of the Eagle driver that the crating had ". . . white pine two-by-fours, which is real soft two-by-fours. . . . There wasn't no bolts in it. It was nailed. I mean two-by-fours was nailed with little nails. . . ." It is difficult to conceive how what was observed at the time of accident was not observable at the time of accepting the crate for shipment.

[5] 13 C. J. S., *Carriers*, p. 538, sec. 254 (d).

The reason for limiting defects that are a defense to a shipper's action against a carrier to hidden ones is that ". . . a carrier may refuse to accept goods which are not properly packed, [and] if the fact of improper packing is known to the carrier, or apparent upon ordinary observation, but it accepts the goods notwithstanding such condition, it is not relieved of liability for loss or injury resulting therefrom." [6] It is only ". . . if it is not apparent to the ordinary observation of the carrier that [the goods] cannot safely be carried in the condition in which they are delivered, [that] the carrier will not be liable for loss or injury resulting solely from such defective shipping condition." [7]

An example of what would be clearly a hidden or concealed defect, not observable at the time of accepting a shipment, is in the case, arising in an eastern state, where a faulty valve on the interior of a tank car could not be examined while the car was full. [8] The tank car was full when presented for shipment by the carrier. When the contents of the car drained away because of such a completely concealed defect, a recital in the bill of lading of "apparent good order" was held not to be prima facie evidence of good condition because ". . . the [defective] condition is concealed." [9]

An example of a defect that was not concealed or hidden from observation is found in another case, also arising in an eastern jurisdiction. [10] There a crane, being shipped by a railroad, was damaged, apparently because a wooden block bolted in front of one of the caterpillar treads of the crane, was not high enough to prevent the

[6] 14 Am. Jur. 2d, *Carriers*, pp. 59, 60, sec. 529.

[7] *Id.* at page 60.

[8] *Lincoln Farm Products Corp. v. Central Railroad Co. of New Jersey* (1963), 81 N. J. Super. 161, 195 Atl. 2d 200, 204.

[9] *Id.* at page 169.

[10] *Tuschman v. Pennsylvania Railroad Co.* (3d Cir. 1956), 230 Fed. 2d 787.

movement of the crane during its shipment. While the fact the block was too small might not be recognized, it was observable, and the reviewing court held the carrier liable, upholding the trial court finding that: "The acknowledgement by the bill of lading of the crane's apparent good order was prima facie evidence that, as to all parts which were open to inspection and visible, the crane was in good order at the point of origin. . . ." [11]

The distinction between the two situations in the two eastern cases cited is that, in one, the defect was hidden from view, while, in the other, it was not. This distinction and the impact upon burden of proof are well stated in a third case from an eastern state holding: "It seems to us that when the contents of a shipment are open and visible to inspection, the 'apparent good order' notation establishes a prima facie case. . . . Where merchandise is sealed in a trailer, and the contents are not open and visible, the plaintiff must establish by direct evidence that the goods were delivered to the carrier in good order." [12]

Since the trial court placed the burden of proof as to the existence of a hidden or concealed defect upon the shipper, instead of upon the carrier where it belonged, the instruction must be held to be in error. Where the instruction related to a key issue in the case, such error must be held to be prejudicial to the plaintiff, requiring reversal and a new trial.

*Special verdict question.*

Among special verdict questions requested by plaintiff and refused by the trial court was one reading: "Did defendant Eagle Motor Lines exercise reasonable care and diligence in transporting the crated panel?" While the phraseology might be improved, such question sought

---

[11] *Id.* at page 791.

[12] *Bluebird Food Products Co. v. Baltimore & Ohio RR. Co.* (E. D. C. Penn. 1971), 329 Fed. Supp. 1116, 1118.

to raise the issue of negligent handling of the cargo by the carrier. There was testimony that the panel had been loaded on the truck with its heavy side on the edge of the trailer nearest the crown of the road, and yet the driver who made the trip testified that, when he picked up the trailer at Eagle's yard, the panel was loaded so that its heavy side faced the opposite side of the trailer. A-C introduced testimony indicating that chains often loosen during travel, and the Eagle driver testified that he did not tighten the chains during the trip. Where the evidence could support a jury finding that the carrier was negligent in failing to tighten the chains or in changing the heavy side of the load from the road center side to the road edge side, the issue of carrier negligence in transporting the panel was present. For our purpose here, we note that, even if the unit was crated with a hidden or concealed defect, liability for damages can be determined only if carrier negligence in transporting the load is found not present. Even if the crate was defective, and the defect not observable, Eagle may be liable under the general rule which is:

"It is generally held that if negligence on the part of a carrier proximately contributes to the loss or injury, the fact the goods were defectively packed or prepared for shipment is not available as a defense, even though it may have been a contributing factor. . . ." [13]

Under this rule the common carrier has the burden of proof, where it certified "apparent good order" in a bill of lading, to establish a hidden or concealed defect in

---

[13] 14 Am. Jur. 2d, *Carriers*, p. 60, sec. 530.

*See also: Klauber v. American Express Co., supra,* at page 25: ". . . The owner may, therefore, if he choose, deliver the goods without any external protection; and if he does, and they are of a nature to be injured by the mere handling and carriage in a careful and proper manner, and are so injured, the loss will be his own; but if they are otherwise injured, by rain or other cause for which the carrier is not excused, the loss will fall upon the carrier."

the manner of packaging or preparation of the shipment by the shipper. Even if this burden of proof is met, a question remains, conceding defective packaging, as to whether negligence of the carrier was a proximate cause of the damage to the cargo carried. New trial having been ordered, we merely note the essential correctness of an imperfectly phrased request for a jury finding as to carrier negligence in transporting the panel. How the load was transported is a material area of inquiry as well as how the load was packaged or crated.

*No costs allowed.*

Ordinarily, where an appellant succeeds in securing a reversal of a trial court order and judgment, he is considered entitled to an award of costs of the appeal. In this case, no costs are allowed to either party. The reason for disallowing the customary costs to the prevailing party is that the brief of appellant's counsel goes beyond permissible bounds in incorrect or misleading excerpting of the record. One example will do. Counsel makes the following quote from the record on page 22 of appellant's brief:

" '. . . you will consider the facilities and opportunities at the driver's disposal for noticing and observing any insufficiency with respect to their crating of the electric control panel . . . *if the defective condition of the crate . . . was open and readily observable to the driver* . . . at the time and place in question then it was the duty of such employee to such carrier to note the defect. . . .' " (Emphasis supplied.)

This is taken from the trial court's instructions to the jury, and is the basis for claiming that the trial court clearly inferred that the crate was in fact defectively crated. So it might appear, but checking the record reveals that the three-dot omission includes leaving out the words "if such you find" so that the italicized quote, as set forth in the record, actually reads: "If the defective

condition of the crate, if such you find, was open and readily observable to the driver . . ." The deletion of the four words that clearly negatived appellant's contention that a fact was being stated or inferred cannot be excused. While quotes are necessarily abbreviated and irrelevant matter excluded, an abuse of editorial discretion is involved when four words are carved out of the middle of a sentence so as to leave an entirely different inference and basis for attack. Costs to the prevailing party, involving payment for the printing of the brief found to be below minimum standards as to accuracy of references made to the record, are denied.

*By the Court.*—Order and judgment reversed and cause remanded for a new trial. No costs to either party.