MASTERCRAFT PAPER PRODUCTS, INC., Respondent, v. CONSOLIDATED FREIGHTWAYS, Appellant: TUCSON WAREHOUSE & TRANSFER, INC., Third-Party Defendant.

*No. 140. Argued September 6, 1972.—Decided October 3, 1972.*
(Also reported in 200 N. W. 2d 596.)

For the appellant there was a brief by *Hughes & Harrand* and oral argument by *Thomas E. Hughes,* all of Oshkosh.

For the respondent there was a brief by *Jerome H. Block* of Appleton, attorney, and *F. David Krizenesky* of Menasha, of counsel, and oral argument by *Mr. Krizenesky.*

HANLEY, J.   There are five issues presented on this appeal:

(1) Did the trial court properly instruct the jury relating to Consolidated's duty as a carrier;

(2) Was it error for the court not to have submitted an instruction relating to the United States Uniform Bill of Lading Act, regarding "shippers load and count;"

(3) Was it error for the trial court to submit an instruction on *res ipsa loquitur;* and, if not, was the instruction improperly worded;

(4) Was it error for the trial court to insert questions in the verdict relating to loss of use and other forms of consequential damages; and

(5) Was the jury's verdict perverse because it returned only a portion of the amount of actual shipping costs?

*Instruction as to common-law duty.*

Appellant contends that the court improperly instructed the jury on its common-law liability. The instruction given by the court reads as follows:

"The rule of law is that common carriers of freight such as the defendant, Consolidated Freightways, is responsible for any damage to any shipment made upon its lines, except damages that were occasioned by an act of God which is something that occurs without the intervention or control of man. . . ."

The appellant argues that a carrier is also not responsible for the ordinary jerks and jars of train movement, citing *Best v. Great Northern Ry. Co.* (1915), 159 Wis. 429, 150 N. W. 484.

The omission of this exception in the instruction was not error since there was no evidence of the press being shipped by rail. The press was shipped the entire distance by truck. Furthermore, appellant did not object to the instruction until his motion for a new trial. If ". . . instructions given are not erroneous as a misstatement of the law but are incomplete, it is the duty of counsel to object at the time the instruction is given. . . ." *Savina v. Wisconsin Gas Co.* (1967), 36 Wis. 2d 694, 702, 154 N. W. 2d 237.

Appellant also contends that it was error to instruct the jury that if Consolidated discovered "before delivery and between terminals" that the press was improperly loaded, then it had a duty to load it properly. The argument is based on the contention that there is no evidence in the record to support this instruction. The record discloses that on October 1, 1968, when Consolidated's delivery driver discovered that the press had fallen off of the skid, he wrote on the delivery ticket: "Press in same cond. as noted above W/R @ Menasha (Press not bolted to runners)." The driver, Al Wohlers,

testified that the "above" referred to in his notation was another notation already on the bill before he wrote his notation: "Skid & Crate falling apart parts falling out Elec motor has broken parts due to poor crating & falling out Damage to actual press unknown W/R Mpls." This notation was dated September 28, 1968. In addition a letter was received in evidence which was sent from Consolidated to Mastercraft indicating that the press had fallen from its eight by eight skids prior to its arrival at Minneapolis. Under these facts the jury could have drawn a reasonable inference that Consolidated discovered "before delivery and between terminals" that the press was improperly loaded. Under the circumstances the instruction given by the trial court was proper.

### Instruction of "shippers load and count."

Appellant contends that it was error for the trial court not to submit an instruction to the jury regarding "shippers load and count." The Bill of Lading Act, 49 USCA, p. 508, sec. 101, provides in part:

". . . The carrier may also by inserting in the bill of lading the words 'Shipper's weight, load, and count,' or other words of like purport, indicate that the goods were loaded by the shipper and the description of them made by him; and if such statement be true, the carrier shall not be liable for damages caused by the improper loading or by the nonreceipt or by the misdescription of the goods described in the bill of lading. . . ."

Appellant contends that absent an instruction on "shippers load and count," the effect would be to keep the burden with it to prove that the truck was not properly loaded and that it was in no other way negligent.

It is well-established in this state that when a consignee shows that a shipper delivered goods to a carrier

in good condition and that the carrier in turn delivered them in a damaged condition, that a prima facie case has been established. At this point ". . . 'it becomes incumbent on the carrier to prove that the loss arose from some cause, or under such circumstances, that he is not liable.' . . ." *Rudy v. Chicago, Milwaukee, St. Paul & Pacific RR. Co.* (1958), 5 Wis. 2d 37, 43, 92 N. W. 2d 367; *Allis-Chalmers Mfg. Co. v. Eagle Motor Lines* (1972), 55 Wis. 2d 39, 45, 198 N. W. 2d 162. The prevailing federal authority regarding the effect of a "shippers load and count" notation on a bill of lading for the interstate shipment of goods is to shift this burden of proof.

The Wisconsin case of *Stella Cheese Co. v. Chicago, St. P., M. & O. Ry. Co.* (1946), 248 Wis. 196, 21 N. W. 2d 655, was cited by the Fifth Circuit in *Dublin Co. v. Ryder Truck Lines, Inc.* (5th Cir. 1969), 417 Fed. 2d 777, as being in accord with the prevailing federal rule. In *Stella Cheese Co., supra,* the plaintiff shipper contended that a bill of lading issued by defendant carrier was prima facie evidence of the receipt of the amount of goods stated in the bill. Since the bill contained the "shippers load and count" notation, the court rejected plaintiff's argument, concluding that the burden had shifted to the shipper to prove that the amount stated in the bill was loaded and that a lesser amount was removed by the consignee.

The trial court denied appellant's request for the instruction on the grounds that it did not properly insert the notation on the bill of lading and that another copy of the bill of lading contained no such notation.

Eleanor Jape, manager of Consolidated's Neenah terminal, testified that a bill of lading is normally prepared in triplicate, with carbon paper between each copy. The top and bottom pieces of the three-piece packet are retained by the shipper, while the middle copy

(Copy No. 2) is given to the carrier and becomes not only its shipping order but also its contract of carriage with the shipper. She further testified that she did not know who, when or where the initials "SLC" were affixed on plaintiff's Exhibit No. 1 (bill of lading).

Mr. Oran Cox, president of Mastercraft, testified that he received a uniform straight bill of lading, which was designated as Copy No. 1. Copy No. 1 had no "SLC" notation; and this copy was itself introduced as evidence at trial.

We think there was no basis in the record to allow an instruction relating to the United States Uniform Bill of Lading Act regarding "shippers load and count," and the trial court was correct in its ruling.

*Res ipsa loquitur instruction.*

The *res ipsa loquitur* instruction given by the trial court reads as follows:

"Now, if you find that the defendants, Consolidated Freightways and the Tucson Warehouse and Transfer Company, Inc., had exclusive control of the Mann Offset Press and Feeder from the time of loading it on the truck of the defendant, Consolidated Freightways, in Tucson, Arizona, to its arrival at its destination at the plant of Mastercraft Paper Products, Inc., in a damaged condition and that such damaged condition is a type or kind that ordinarily would not have occurred had the defendants exercised ordinary care, then you may infer from the damaged condition of the Mann Press and Feeder that there was negligence on the part of the defendants unless they have offered you an explanation of the damaged condition which is satisfactory to you. It follows that when property is received by the carrier in apparent good order and subsequently delivered in a damaged condition a prima facie case of negligence is established against the carrier."

Appellant contends that the trial court erred in giving the *res ipsa loquitur* instruction under the facts as

presented and, alternatively, even if the court finds that it was proper to give the instruction, the form in which it was given placed an improper burden on him.

Wisconsin has very well-settled case law on what conditions must be present before the doctrine of *res ipsa loquitur* is applicable; and these conditions were most recently set forth by the court in *Utica Mut. Ins. Co. v. Ripon Cooperative* (1971), 50 Wis. 2d 431, 436, 184 N. W. 2d 65:

". . . (1) The event in question must be of the kind which does not ordinarily occur in the absence of negligence; (2) the agency or instrumentality causing the harm must have been within the exclusive control of the defendant. . . ."

The presence of these conditions allows a jury to draw a permissible inference of negligence which ultimately may serve to support a verdict. *Knief v. Sargent* (1968), 40 Wis. 2d 4, 6, 161 N. W. 2d 232.

In deciding whether or not a plaintiff is entitled to a *res ipsa loquitur* instruction, the court has stated that if his proof of negligence is ". . . so substantial that it provides a full and complete explanation of the event, if the jury chooses to accept it[,] [i]n that case, causation is no longer a mystery, and the *res ipsa loquitur* instruction would be superfluous and erroneous. . . ." *Utica Mut. Ins. Co. v. Ripon Cooperative, supra,* at page 439. Consolidated contends that evidence adduced at trial provided a full and complete explanation of the event in question; namely, that there was evidence that Tucson failed to bolt or adequately secure the press to the skid and that the press fell partially off of the skid, while at the same time there is no evidence that Consolidated helped in the loading or was in any other way negligent.

Assuming all of the above facts to be true, we think, they do not provide a full and complete explanation of

the event. The mystery of causation remains; and an instruction on *res ipsa loquitur* was warranted.

Appellant's second ground of error based upon the instruction given is that it allowed the jury to impute to Consolidated any negligence that they may have found on the part of Tucson. His argument is based on that part of the instruction which reads:

"Now, if you find that the defendants, Consolidated Freightways and the Tucson Warehouse and Transfer Company, Inc., had exclusive control of the . . . Press and Feeder from the time of loading . . . to its arrival . . ."

In Wisconsin, there is very well-settled law that exclusive control of the instrumentality causing harm by the defendant is an essential element before an application of the doctrine can take place. *Turk v. H. C. Prange Co.* (1963), 18 Wis. 2d 547, 119 N. W. 2d 365. The purpose of this rule is set forth with clarity in comment *g* to sec. 328 D of the Restatement, 2 *Law of Torts* 2d, at page 161:

". . . Usually this is done by showing that a specific instrumentality which has caused the event, or all reasonably probable causes, were under the exclusive control of the defendant. Thus the responsibility of the defendant is proved by eliminating that of any other person."

We are satisfied that Consolidated had exclusive control of the instrumentality of harm during the period of transit only. Whatever control Tucson exercised terminated when the press was loaded on the truck. The trial court, in lumping these two separate and distinct dominions of control into the same instruction, allowed the jury to impute to Consolidated whatever negligence they may have found with the manner in which Tucson loaded the truck. This, we conclude, was prejudicial error.

*Damages.*

Question No. 6 of the special verdict relating to damages sustained by Mastercraft was answered by the jury as follows:

"What sum of money will reasonably compensate the plaintiff, Mastercraft Paper Products, Inc.,:
"(a) For the damages to the Mann Offset Press and Feeder?
"Answer: $8,000.
"(b) For the loss of the use of the Mann Offset Press and Feeder?
"Answer: $9,657.
"(c) For additional expenses for blankets, if any?
"Answer: $1,088."

Appellant contends it was error for the trial court to introduce Questions (b) and (c), as they were not proper elements of damages under the facts of this case. Consolidated rests its contention upon the conclusion that such elements of damage are somehow altered by the Carmack Amendment to the Interstate Commerce Act. 49 USCA, p. 115, sec. 20 (11). This argument assumes that Mastercraft's action is one for the negligent performance of a duty created by an interstate contract of carriage, rather than one in tort, as Mastercraft's pleadings clearly indicate. Respondent argues that he was in no way a party to the bill of lading, as it represented a contract between the shipper and the carrier. Federal law is quite clear, however, that where a consignee, though himself not a party to the bill of lading, maintains an action based on the negligent performance of a duty created by an interstate contract of carriage, the action is one in contract and governed by the Carmack Amendment. *American Synthetic Rubber Corp. v. Louisville & Nashville RR.*

*Co.* (6th Cir. 1970), 422 Fed. 2d 462. Federal law is equally clear, however, that:

". . . Where plaintiff strenuously argues that he is not relying on any federal substantive right and no reference to federal provision is made in his complaint, defendant has a substantial burden of persuading the court that the plaintiff mistakes the gravamen of his complaint. . . ." *Sylgab Steel & Wire Corp. v. Strickland Transportation Co.* (E. D. N. Y. 1967), 270 Fed. Supp. 264, 267.

The appellant has presented no evidence of why Mastercraft's action was one based upon a duty created by the bill of lading, rather than an action which was substantially peripheral to the original agreement of carriage between the shipper and the carrier. Consolidated has not met its burden of proof. The case of *Nashban Barrel & Container Co. v. Parsons Trucking Co.* (1971), 49 Wis. 2d 591, 182 N. W. 2d 448, governs the law of this case, as it allowed for recovery for the loss of use, providing it was reasonable under all of the circumstances.

Appellant next argues that even if the court finds it to be proper, the court should not have instructed on them, as they were too speculative.

There was credible testimony to the effect that as a result of the damage, the press had depreciated in value from $6,000 to $8,000. As a result of the press being totally inoperable at first and at a fraction of its normal capacity thereafter, Mastercraft had to farm out some of the work. The $9,657 item was substantiated by the bills submitted as exhibits. Similarly, the record is also clear that because of the damage the press was not capable of performing high quality printing required by some of Mastercraft's customers. Because of the damage the press wore out a high number of "blankets." There is credible evidence in the record to support each of these claims.

*Perversity of verdict on counterclaim.*

Appellant contends that because the jury returned a verdict of approximately 50 percent of the actual freight charges which were the subject of its counterclaim that part of the verdict is perverse and contrary to law. We are satisfied that the answer to the verdict question on the counterclaim was contrary to law. Under the evidence that $938.24 was the rate published by the Interstate Commerce Commission and that had Consolidated charged less than this, it would have subjected itself to liability, the trial court should have answered the question of freight charges in the amount of $938.24, as a matter of law.

We conclude that the judgment must be reversed and the cause remanded to grant a new trial in accordance with this opinion on the issue of liability only. In the verdict to be submitted the trial court will find the damages as heretofore determined. The trial court will also answer the damage question of the counterclaim as a matter of law in accordance with this opinion.

*By the Court.*—Judgment reversed and a new trial ordered consistent with the opinion.