(174 App. Div. 36)

## PSAKI v. KISSEL MOTOR CAR CO.

(Supreme Court, Appellate Division, First Department. July 10, 1916.)

1. BROKERS ☞49(1)—COMMISSIONS.

Where plaintiff relied on contract to pay commission for information and services in selling motor trucks, but refused to appear in the transaction and another representative of defendant made the sale, plaintiff was not entitled to a commission; his sole part in the transaction having been to give information, before the contract for commission was made.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. § 70; Dec. Dig. ☞ 49(1).]

2. BROKERS ☞85(1)—COMMISSIONS—EVIDENCE—ADMISSIBILITY.

In such case, defendant should have been allowed to show by a cablegram that it had the information plaintiff claimed to have imparted, prior to the transaction with him.

[Ed. Note.—For other cases, see Brokers, Cent. Dig. §§ 106, 108, 110, 115; Dec. Dig. ☞85(1).]

Appeal from Trial Term, New York County.

Action by Alexander G. Psaki against the Kissel Motor Car Company. From judgment for plaintiff, and order denying motion for new trial, defendant appeals. Reversed, and new trial granted.

Argued before CLARKE, P. J., and McLAUGHLIN, SCOTT, DOWLING, and DAVIS, JJ.

Burt D. Whedon, of New York City, for appellant.
Morris Leight, of New York City, for respondent.

DAVIS, J. This action was brought to recover commissions for services alleged to have been rendered by the plaintiff in connection with the sale of 25 auto trucks to the Greek government. The plaintiff recovered a judgment for the sum of $2,630.60.

The complaint alleges that in August, 1914, the plaintiff informed the defendant that the Greek government was in the New York market to purchase automobiles, and that negotiations therefor were to be made with Mr. Schliemann, the Greek minister at New York; that, before giving this information to the defendant, the defendant agreed to pay for "the said information, and for services rendered and to be rendered" by him in the said transaction, commissions at the rate of 5 per cent. of the total sales made by the defendant to the said Greek government; that thereafter, in September, 1914, the defendant sold and delivered to the Greek government, through negotiations with the Greek minister, 25 automobiles for the sum of $46,250,

and that thereafter the defendant received payment of this sum; and that the plaintiff's commissions amounted to $2,300, for which he demands judgment. The answer is a general denial, admitting, however, that the defendant made the sale of the automobiles and received payment for the same.

Three bills of particulars were served by the plaintiff. In one bill plaintiff alleges that he imparted the information as to the Greek government being in the New York market to purchase automobiles to C. H. Schneider, on August 14, 1914, and that the agreement to pay for this information and services was made on August 19, 1914. According to the third bill plaintiff gave this information on August 14, 1914, and the agreement to pay for it was made at that time by Schneider representing the defendant, and that this agreement was ratified and adopted by the defendant on August 19, 1914, through its vice president, G. C. Kissel.

[1] Although there are strong contradictions between the allegations of the complaint and those of the bills of particulars, the plaintiff finally adopted and tried to prove a cause of action upon an agreement to pay him a certain commission in consideration of his imparting certain information and aiding the defendant to secure an order for auto trucks from the Greek government, which order the defendant secured. The plaintiff attempted to show that he made an agreement with Schneider, which was afterwards ratified by Kissel, representing the defendant. Examination of plaintiff's testimony fails to disclose any evidence whatever that the giving of the alleged secret information was any part of the consideration for the promise to pay commissions. The plaintiff says nothing about it, and Schneider testifies that the information came first and the promise followed. He testifies that plaintiff called at his office and said that he had an order for 25 or 30 auto trucks for Greece and asked how much commission he would allow him. Thereupon Schneider said: "If you can get an order for 25 or 30 trucks, we will pay you 5 per cent." There can be no doubt upon the evidence that this was the agreement made between the parties. Nowhere does it appear in the evidence that the plaintiff held back his information until the agreement to pay 5 per cent. was made. Furthermore, there is no evidence to show that the plaintiff did anything to assist the defendant in getting this order. The defendant's representative sought an interview with the Greek minister for the purpose of opening negotiations, and asked the plaintiff to introduce them. He refused to secure the interview for them, upon the pretense that it was necessary for him to keep in the background. Finally the defendant's representatives sought and obtained the interview themselves and secured the order, and for aught this record discloses entirely without any aid from the plaintiff.

Yet, notwithstanding this absence of proof, and the charge of the court that the plaintiff could not recover unless the jury found that the sale of the trucks was effected through the means and by the instrumentality of the plaintiff, the jury rendered a verdict in favor of plaintiff. Manifestly the verdict was so clearly against the evidence

that it becomes necessary to reverse the judgment and grant a new trial.

[2] The defendant sought to show, through a cablegram received by it on or about August 7, 1914, that it had information of the Greek government's purpose to purchase automobiles several days before the plaintiff imparted the information to Schneider. The court, however, refused to admit this cablegram in evidence. We think this was error. The jury might have concluded, from a reading of this cablegram, that the so-called secret information, claimed by the plaintiff to have been disclosed to the defendant on the 14th of August, was really in the possession of the defendant seven days before that date. In view of the importance of this issue in the case, we think the ruling of the court was an error requiring the reversal of the judgment.

Judgment and order reversed, and new trial granted, with costs to appellant to abide event. All concur.