SIDNEY GOODMAN, Appellant, *v.* MARCOL, INC., Respondent.

(Argued January 18, 1933; decided February 28, 1933.)

*Irvin E. Klein* for appellant. The court erred in failing to submit to the jury the question of defendant's good faith, in terminating the contract of employment with plaintiff. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Travis* v. *Bowron*, 138 App. Div. 554; *St. Regis Paper Co.* v. *Hubbs & Hastings Paper Co.*, 235 N. Y. 30; *L'Ecluse* v. *Field*, 154 App. Div. 685; *Schwartzman* v. *Pines Rubber Co.*, 189 App. Div. 749.)

*John A. Wallace* for respondent. The evidence fails to disclose any question of good faith for a jury to consider. (*Sibbald* v. *Bethlehem Iron Co.*, 83 N. Y. 378; *Wylie* v. *Marine Nat. Bank*, 61 N. Y. 415.)

KELLOGG, J. In November, 1927, the defendant employed the plaintiff to sell for it a certain apartment house, at the price of $180,000. Nothing was said as to

the length of the term of employment, or as to the commissions to be paid. In March, 1928, the plaintiff interested Mr. and Mrs. Charles Ross, and so informed the defendant, officers of which visited the premises with the Rosses, that they might inspect the same. The Rosses made to the plaintiff an offer of $170,000 for the property, which was rejected by the defendant; they subsequently made an offer of $172,500, which was likewise rejected; still later they offered $175,000, and again rejection followed. On the rejection of each offer, the Rosses requested a few more days to consider the matter, and the plaintiff continued his efforts to bring them to the defendant's terms. In the latter part of April, 1928, the Rosses finally made an offer to the plaintiff of $177,500. The plaintiff reported this offer to Mr. Calhoun, the treasurer of the defendant, saying, " well, I have the folks up to $177,500, and I feel within a few days I probably will be able to consummate and get them up to $180,000." Calhoun, instead of expressing his satisfaction, made this response: " By the way, what is your commission? " The plaintiff said the usual commission of two and one-half per cent, or $4,500. Thereupon Calhoun said: " Hell, I would not pay any such commission to anybody to sell that piece of property; take it out of the market. I can get plenty of brokers to sell it to them for half or less than half that commission." This answer was reported by the plaintiff to the Rosses, who said they were going away for the summer; that they desired the plaintiff meanwhile not to propose a sale to any other persons. Within two weeks thereafter the defendant employed a broker named Lockwood to negotiate with the Rosses. On August 10, 1928, Lockwood and Calhoun attended the Rosses at their summer home, and upon this occasion the Rosses agreed to purchase for $180,000. The sale was shortly thereafter concluded, upon terms of payment, except for the total amount, which were not better than those proposed by them through the plaintiff.

Thereafter the defendant paid Lockwood's firm, as commissions, the sum of $2,100, which was less than half the prevailing rate. The plaintiff brought this action, charging that the defendant wrongfully and in bad faith, and for the purpose of defrauding plaintiff of his commissions, withdrew the property from the market. At the conclusion of the plaintiff's case, a motion to dismiss the complaint was granted, and the judgment of dismissal has been affirmed.

The principles governing such a case as this were authoritatively laid down by Judge FINCH in *Sibbald* v. *Bethelehem Iron Co.* (83 N. Y. 378, 379, 382, 383, 384). It was there said that the duty of the broker is " to bring the minds of the buyer and seller to an agreement for a sale, and the price and terms on which it is to be made, and until that is done his right to commissions does not accrue;" that " a broker is never entitled to commissions for unsuccessful efforts;" that " if he fails, if without effecting an agreement or accomplishing a bargain, he abandons the effort, or his authority is fairly and in good faith terminated, he gains no right to commissions." However, this must be taken with one important limitation. " If the efforts of the broker are rendered a failure by the fault of the employer " he does not lose his commissions. This " upon the familiar principle that no one can avail himself of the non-performance of a condition precedent, who has himself occasioned its non-performance." Usually a broker is entitled to a fair and reasonable opportunity to perform his obligation. If this be granted, " the right of the principal to terminate his authority is absolute and unrestricted," provided " that he may not do it in bad faith, and as a mere device to escape the payment of the broker's commissions. Thus, if in the midst of negotiations instituted by the broker, and which were plainly and evidently approaching. success, the seller should revoke the authority of the broker, with the view of concluding the bargain without his aid, and avoiding the pay-

ment of commissions about to be earned, it might well be said that the due performance of his obligation by the broker was purposely prevented by the principal." The remarks of Judge DANIELS in *Satterthwaite* v. *Vreeland* (3 Hun, 152) were quoted as a correct statement. They were to the effect that to maintain a claim by the broker for his commissions, he must either show that he had procured a purchaser at the stipulated price " or that the defendant had deprived him of the opportunity to do so while the privilege " lasted. In *Donovan* v. *Weed* (182 N. Y. 43, 46) CULLEN, J., after remarking that the authority of *Sibbald* v. *Bethlehem Iron Co.* (*supra*) had never been questioned, stated: " In other words, the law as settled by that case is that to entitle a broker to commission he must procure a purchaser during the term of his employment; that where no definite time is fixed the broker has a reasonable time in which to effect the sale; but that after the lapse of a reasonable time the principal may terminate his authority and relieve himself from liability unless such action is taken in bad faith for the purpose of depriving the broker of the fruits of his labor at the time such labor was about to prove effectual."

The evidence here is not only sufficient, it strongly impels to the conclusion that the plaintiff was acting within a reasonable time when he submitted the last offer received of $177,500; that his labor to procure the stipulated price of $180,000 was about to prove successful; that he was dismissed from his employment by the defendant, not because a reasonable time had elapsed, but solely that the defendant might save itself from the payment of the customary commissions. When the plaintiff reported to Calhoun his last offer, stating that he expected shortly to get the stipulated price, Calhoun, perceiving that this would in all likelihood eventuate, at once turned his thoughts to the subject of commissions, stating that he could get the work done for less than half the plaintiff's price. So he dismissed the plaintiff and made good his word of procuring the desired sale at one-half the charge

proposed by the plaintiff. We think that questions of fact arose which required a submission of the case to the jury.

The judgments should be reversed and a new trial granted, with costs to abide the event.

POUND, Ch. J., CRANE, LEHMAN, O'BRIEN, HUBBS and CROUCH, JJ., concur.

Judgments reversed, etc.