**GAYLEN MACHINERY CORPORA-TION, Plaintiff-Appellee,**

v.

**PITMAN–MOORE COMPANY, Defendant-Appellant.**

**No. 32, Docket 25572.**

United States Court of Appeals Second Circuit.

Argued Nov. 4, 1959.

Decided Dec. 24, 1959.

Charles B. Blackmar, of Blackmar, Swanson, Midgley, Jones & Eager, Kansas City, Mo. (John J. Loflin, Jr., of

Kelley, Drye, Newhall & Maginnes, New York City, on the brief), for defendant-appellant.

Alvin Miller, New York City, for plaintiff-appellee.

Before CLARK, HINCKS, and WATERMAN, Circuit Judges.

CLARK, Circuit Judge.

This action is based on defendant's written promise to pay a 10 per cent commission if plaintiff succeeded in obtaining an order for Salk vaccine from the Argentine Government. It was originally brought in the Supreme Court of New York and was removed to the court below by the defendant because of the diverse citizenship of the parties. At the close of plaintiff's case defendant elected to stand on its motion for a directed verdict. The case was then submitted to a jury, which returned a plaintiff's verdict, upon which the court entered judgment. Defendant's motion under F.R. 50(b) for judgment or in the alternative for a new trial was denied and this appeal followed.

It is common ground that defendant promised to pay a commission and that it subsequently received an order from the Argentine Government. Since a nonexclusive agency was created the issue posed is whether the evidence was adequate to support the jury's finding that plaintiff was the effective cause of the sale. The parties agree that New York law governs, Krasnow v. National Airlines, 2 Cir., 228 F.2d 326; Lobel v. American Airlines, 2 Cir., 192 F.2d 217, certiorari denied 342 U.S. 945, 72 S.Ct. 558, 96 L.Ed. 703, though, as we shall see, that presents no unusual features.

Since defendant's chief attack is upon the sufficiency of the evidence we shall first turn to that. The following facts presented to the jury by the plaintiff were not contested. Defendant is a manufacturer of poliomyelitis vaccine in Indianapolis, Indiana. On November 2, 1956, Hyman Rosenstein, a partner of Mayco Chemical Co. in New York City, telephoned the defendant's export manager that he could get an order from the Argentine Government for two million cubic centimeters of polio vaccine, with one million for immediate shipment. Defendant had previously known of Argentina's desire to purchase vaccine, but its attempts to obtain an order had been unsuccessful. Because of the size of this proposed order it was referred to defendant's vice-president in charge of exports and being agreed upon over the telephone, it was confirmed by telegram and an exchange of letters of November 3 and 8, 1956. Mayco was to receive a commission of 10 per cent, upon its procurement of an order from the Argentine Government for one million c.c. of poliomyelitis vaccine at a price of $5.70 per 9 c.c. vial, payment to be by irrevocable letter of credit. As "token of the buyer's good faith" Rosenstein for Mayco deposited a check for $5,000 against the purchase of one million c.c. of polio vaccine of defendant's manufacture packed in 9 c.c. vials.

Rosenstein then got in touch with plaintiff, Gaylen Machinery Corporation, which acted as Mayco's subagent in the negotiations and appears herein as assignee of all Mayco's claims against defendant; hence the Mayco and Gaylen interests are identical for present purposes. Gaylen's president, Weisman, had previously done business with the Argentine embassy, selling aircraft, equipment, metals, and chemicals over a number of years prior to 1956. As he testified, he then spoke to Commander Juan Bonomi at the embassy, after which he reported to Mayco and learned that defendant had the vaccine available for sale to the Argentine Government. So in November 1956, after his company had put up the $5,000 deposited with defendant, he was in touch with the Argentine embassy on "many occasions." Pursuing the matter further, defendant on November 7, 1956, sent a telegram addressed to "Embassy of Argentina, Washington, D. C., Captain Juan Bonomi," which read as follows:

"Reference Offer 1,000,000 CC Polio Vaccine At Five Seventy Per 9 CC Vial,

Made Via Gaylen, Confirm Availability Material As Offered Stop Price Five Seventy Is Our Standard Government Price"

On the same day it wired Mayco in New York, saying: "Telegraphed Argentine Embassy Washington Attention Bonomi as follows," and quoting the above telegram. And on November 21, 1956, it wrote directly to the Ministry of Public Health in Buenos Aires, again confirming "the offer of one million cubic cc's [sic] of Salk poliomyelitis vaccine" at the quoted price and stating explicitly: "This offer was made to the Embassy of the Argentine Republic in Washington through Gaylor (Gaylen) Machinery Corporation." [1]

Apparently the Argentine Government had made some plans to accept the offer,[2] but subsequently objected to the payment of any commissions to agents. On November 27, 1956, defendant returned the deposit to Mayco and advised it that negotiations "will not be consummated as such and that no order for this amount will be forthcoming." This communication was supplemented by a telegram and a letter of November 28, 1956, which stated that the "order" had been "cancelled" by the Argentine Government on the ground that orders involving intermediary commissions were not in the national interest. But on the same or the following day defendant received a memorandum from the Argentine Chargé d'Affaires in Washington, D. C., which confirmed an order for two million c.c. of vaccine. Although this memorandum was dated November 28, 1956, defendant's export manager testified that it was written during a meeting in the embassy on November 29. This sale was completed. Plaintiff, however, learned of it only several months later from accounts of the shipment in Argentine newspapers.

Defendant relies on cases holding that the mere fact that an agent approached a party who eventually purchases does not constitute substantial evidence that the agent was the effective cause of the sale, e.g., Psaki v. Kissel Motor Car Co., 174 App.Div. 36, 160 N.Y. S. 107; Blumberg v. Sterling Bronze Co., Sup., 111 N.Y.S. 529. But cf. Salzano v. Pellillo, 4 A.D.2d 789, 165 N.Y.S.2d 550. Here, however, there was sufficient additional evidence bearing on effective cause to justify submission of the issue to the jury. See also Fanning v. Maggi, Sup., 127 N.Y.S.2d 152, affirmed 282 App. Div. 1067, 126 N.Y.S.2d 551. The time sequence of events is itself enlightening. Defendant's letters of November 27 and 28, 1956, represented that no contract would be forthcoming, although in fact such an agreement was closed on the latter or following day. The fact that final negotiations were conducted in plaintiff's absence does not preclude recovery. Shapiro v. Greenwich Sav. Bank, 266 App.Div. 359, 42 N.Y.S.2d 316, affirmed 293 N.Y. 724, 56 N.E.2d 734. Defendant's letter emphasized the fact that the Argentine Government had cancelled the contract because of a policy opposed to intermediary sales commissions. But such action indicates the pur-

---

1. This letter followed after a letter of November 14, 1956, to defendant, received on November 19, from Juan H. Bonomi, "Lieutenant Commander, Assistant Naval Attaché," at the Argentine embassy in Washington, which was excluded at the trial, over plaintiff's objections, for reasons not stated. Defendant had objected that Bonomi's authority as an agent of the Argentine Government was not shown, and also on the ground of hearsay. But Bonomi's authority to make the purchase was never involved, while the letter was actually a part of the series of events upon which defendant acted. The letter mentioned an intent of the Argentine Ministry of Public Health to accept the offer, but also stated that, "taking into consideration that the offer for the lot was made and reserved by the Gaylor Machinery Corp.," the Minister had intended to write that no action should be taken against this firm, since the only party responsible for the delay was defendant's representative in Buenos Aires. Thus the letter did furnish cumulative evidence of the prominent part in the negotiations ascribed by all to Gaylen, and underlined defendant's own acknowledgment of that fact in its following letter of November 21, 1956.

2. See note 1 supra.

chaser's recognition of the plaintiff's active role in procuring the sale. It further suggests that an order had already been submitted, but was withdrawn when misgivings developed over plaintiff's commission. But commissions would rarely be received if the parties to a sale, having been brought together by an agent, were then free to agree that no commission should be paid and to divide the saving between them. Cf. Hornstein v. Podwitz, 254 N.Y. 443, 173 N.E. 674, 84 A.L.R. 1. Defendant complains of the generality of Weisman's testimony as to his being in touch with the embassy on many occasions. It is significant, however, that defendant did not choose to cross-examine him or introduce testimony of its own. And quite decisive are its telegram of November 7 and letter of November 21, 1956, confirming Gaylen's agency in the very deal to the prospective purchaser. Thus on the record plaintiff appears as the only active inducing cause of the sale.

██ This conclusion also disposes of defendant's assertion that recovery is precluded by the fact that the terms of payment materially differed from those specified in the agency agreement. Peebles v. Prudential Ins. Co. of America, 6 Cir., 110 F.2d 76, 79. The final order called for payment of one-fourth of the total price in Argentine pesos. This was of substantial benefit to the Argentine Government because of its dollar shortage. But the variation was immaterial to the defendant, because it needed pesos in connection with a capital investment in Argentina. The sales contract also provided for payment against sight draft upon receipt of merchandise, rather than by irrevocable letter of credit. But the jury would be justified in finding that the former method of payment provided defendant with as much security as the latter. A further question is raised by the fact that the agency agreement provided for an order signed by the Argentine Ambassador. Plaintiff's evidence showed only a confirmation signed by the Chargé d'Affaires. But it does not appear that the signature of the Ambassador was of any intrinsic value to defendant, which merely desired and received an order from an authorized representative of the Argentine Government. Further, even if any of the above modifications constituted a substantial variance, defendant may not now complain of the terms upon which it was then satisfied to contract. See Risser v. Hirshhorn, 2 Cir., 199 F.2d 917; Colvin v. Post Mortgage & Land Co., 225 N.Y. 510, 122 N.E. 454.

██ ██ It is also asserted that the letter of November 27, 1956, terminated the agency before an order was obtained and that there is no evidence that such termination was in bad faith. See 2 Restatement, Agency 2d § 445, comment *a* (1958). Where revocation has occurred, the agent is nevertheless entitled to his commission if the principal revokes the agency in order to avoid payment of the commission and the sale is thereafter accomplished as the result of the agent's prior efforts. 2 Restatement, Agency 2d § 454 (1958). See Goodman v. Marcol, Inc., 261 N.Y. 188, 184 N.E. 755, 88 A.L.R. 714. Since the evidence discussed in regard to the issue of effective cause is equally probative on the closely related issue of bad faith, that discussion is also dispositive of this contention.

Defendant also assigns various prejudicial errors to the charge of the court. A reading of the charge as a whole convinces us, however, that it was circumspect and that the issues were fairly submitted to the jury. A question is also raised by the allowance of interest from the date of the order, since the agency agreement provided for payment of the commission "upon completion of each shipment." It appears without challenge that 500,000 c.c. were shipped on December 31, 1956, and a second 500,000 c.c. on January 8, 1957. Since plaintiff consents that the order allowing interest be modified accordingly, interest will be allowed on the amount of the commission only from these dates, and not from November 28, 1956. With this modification the judgment is affirmed, with costs to the plaintiff.