**SEARS, ROEBUCK AND COMPANY, Plaintiff-Appellee,**

v.

**TEAMSTERS LOCAL UNION NO. 243, affiliated with the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, Defendant-Appellant.**

No. 81–1157.

United States Court of Appeals, Sixth Circuit.

Argued May 26, 1982.

Decided July 16, 1982.

Rehearing and Rehearing En Banc Denied Sept. 13, 1982.

Matthew R. Robbins, Goldberg, Previant, Uelmen, Gratz, Miller, Levy & Brueggeman, Milwaukee, Wis., Jerome S. Coleman, Coleman, Lipson & Bradford, Farrington Hills, Mich., for defendant-appellant.

Robert J. Finkel, Levin, Levin, Garvett & Dill, Southfield, Mich., S. Richard Pincus, Fox & Grove, Chicago, Ill., for plaintiff-appellee.

Before EDWARDS, Chief Circuit Judge, MARTIN, Circuit Judge, and WALINSKI, District Judge.*

* Honorable Nicholas J. Walinski, District Judge, United States District Court for the Northern District of Ohio, sitting by designation.

PER CURIAM.

Teamsters Local 243 appeals an order of the District Court, 507 F.Supp. 658, vacating an arbitration award.

Local 243 is the collective bargaining representative for warehouse and service employees at five Sears stores in the Detroit, Michigan area. Twelve percent of this bargaining unit consists of "MA" sales employees who sell Sears appliance maintenance contracts by telephone.

In December, 1978, Sears subcontracted the work of the entire MA sales staff, thereby eliminating ninety jobs. The laid-off employees were permitted to "bump" into other job classifications pursuant to the Job Elimination clause of the collective bargaining agreement.

The Union protested Sears' action and the issue was submitted to arbitration.

The crux of the question before the arbitrator was whether the collective bargaining agreement between Local 243 and Sears permits such extensive subcontracting. The agreement contains a subcontracting clause which reads, in its entirety:

Section 10. A. The right to subcontract any type of work within the jurisdiction of the Union shall be vested exclusively with the Company, provided however, that such right to subcontract shall be restricted to work that can be performed more efficiently and economically outside of the bargaining unit, and no work shall be subcontracted solely to discriminate against the Union.

B. The Company agrees, prior to the actual subcontracting, the Company will substantiate such action by submitting facts and figures that the work involved can be done more efficiently and economically.

The arbitrator recognized that the collective bargaining agreement does not, on its face, limit Sears' authority to subcontract in the interest of efficiency and economy, provided it does not do so in an effort to undermine the bargaining unit. He specifically found that Sears had demonstrated the requisite bona fides in entering into the challenged subcontract. Nevertheless, the arbitrator declined to rely on the "plain language" of the agreement. Instead, he applied a "balancing test" and concluded that the costs to the Union of the disputed subcontract outweighed its benefits to the employer. On this rationale, he ordered reinstatement of the MA sales unit, with back pay to the laid-off employees.

Sears appealed to the District Court for the Eastern District of Michigan. The District Judge, in a thorough opinion, found that the arbitrator had exceeded his authority when he inferred limitations on subcontracting beyond those contained in the collective bargaining agreement itself. We must agree, even though the result in this case is harsh.

■ We are fully cognizant of the favored status the federal law accords arbitration and arbitrators' awards. *See* the "Steelworkers Trilogy" beginning at *United Steelworkers of America v. American Mfg. Co.*, 363 U.S. 564, 80 S.Ct. 1343, 4 L.Ed.2d 1403 (1960); *Retail Clerks v. Lion Dry Goods, Inc.*, 341 F.2d 715 (6th Cir. 1965). An arbitrator's powers are not, however, completely untrammelled. As the Supreme Court observed in *United Steelworkers v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960), the third of the "Trilogy" cases,

[A]n arbitrator is confined to interpretation and application of the collective bargaining agreement; he does not sit to dispense his own brand of industrial justice. He may of course look for guidance from any sources, yet his award is legitimate only so long as it draws its essence from the collective bargaining agreement. When the arbitrator's words manifest an infidelity to this obligation, courts have no choice but to refuse enforcement of the award.

■ This court has consistently adhered to the principle that an arbitrator may construe ambiguous contract language, but lacks authority to disregard or modify plain or unambiguous contract provisions. *See Detroit Coil v. Int. Assn. of Machinists & Aerospace Workers*, 594 F.2d 575 (6th Cir.

1979); *Local Union No. 89 v. Hays & Nicoulin*, 594 F.2d 1093 (6th Cir. 1979); *Amanda Bent Bolt v. U.A.W., Local 1549*, 451 F.2d 1277 (6th Cir. 1971). In the present case, we cannot escape the conclusion that the arbitrator exceeded his authority by amending the express terms of the agreement negotiated by the parties.

The authorities cited by the arbitrator in support of his use of a "balancing test" in this case are inapposite. There is, as the District Court explained, a critical distinction in arbitration cases between collective bargaining agreements which are silent on the question of subcontracting and those which specifically address the issue.

In the former instance, it is accepted practice for arbitrators to infer a "reasonableness" limitation on the employer's right to subcontract; "reasonableness" is determined by a "balancing test" or cost-benefit analysis. *See, e.g., Meade Corp.*, 62 LA 1000 (Bothwell, 1973). Where a collective bargaining agreement is silent, it falls to the arbitrator to fill the "inevitable lacunae." *See United Steelworkers v. New Park Moving Co.*, 273 F.2d 342, 356 (10th Cir. 1959) and cases cited therein.

On the other hand, when the parties to a collective bargaining agreement have negotiated a clear, unambiguous subcontracting provision, an arbitrator lacks discretion to alter the effect of that provision by performing, *sua sponte*, a "balancing test." The weight of authority supports this conclusion. *See, e.g., Laclede Gas Co.*, 67 LA 461 (David, 1976); *Electric Storage Battery Co.*, 44 LA 782 (Koven, 1965). *See also Timkin Co. v. Local Union No. 1123*, 482 F.2d 1012, 1014 (6th Cir. 1973). *Contra Consolidated Aluminum Co.*, 66 LA 1170 (Boals, 1976). The subcontracting clause before us simply cannot be characterized as "ambiguous" or subject to conflicting interpretations. *Cf. Am. Fed. of T.V. & Radio Artists v. Storer Broadcasting Co.*, 660 F.2d 151 (6th Cir. 1981); *Johnson Bronze Co. v. U.A.W.*, 621 F.2d 81 (3d Cir. 1980). Under these circumstances, the District Court was correct in holding that Sears is entitled to the benefit of its bargain, even though that

bargain may, in our eyes, seem "unfair" or inequitable.

The judgment of the District Court is affirmed.