Meyer, J.
(dissenting in part).The harshness of a rule which permits an employer to discharge with impunity a 30-year employee one day before his pension vests (see *308 United Steelworkers of Amer., Local No. 1617 v General Fireproofing Co., 464 F2d 726; and Savodnick v Korvettes, Inc., 488 F Supp 822) or for no other reason than that he filed a compensation claim (2A Larson, Workmen’s Compensation Law, § 68.36), the bizarre origin of the termination-at-will rule,[1] the change of economic and constitutional philosophy that has occurred since its adoption,[2] the exclusion of a substantial segment of the working community from its effects through “just cause” limitations upon the right to fire resulting from collective bargaining, and the inconsistency of the rule not only with the common law of England and with earlier New York decisions but also with the law of most industrial countries of the world,[3] have caused an outpouring of judicial and scholarly writings intended to ameliorate, if not abolish, the rule.[4] I *309 agree with the majority that we should not now adopt the tort remedies proposed in those writings, because such remedies are essentially grounded in public policy, the declaration of which is a function of both the Legislature and the courts, because the New York Legislature has not been reticent in the area,[5] and because of the difficulty encountered by the courts adopting such remedies in articulating the exact nature of the public policy which will bring them into play (compare Adler v American Std. Corp., 291 Md 31, with Hinrichs v Tranquilaire Hosp., 352 So 2d 1130 [Ala]; and see De Giuseppe, 10 Ford Urban LJ, at p 36 ff).
*310 I agree also with so much of the majority opinion as holds the fourth cause of action not barred by the Statute of Frauds and the fifth cause of action not barred by the Statute of Limitations. I cannot, however, accept the majority’s refusal to follow precedent decisional law recognizing an implied-in-law obligation on the part of the employer not to discharge an employee for doing that which the employment contract obligated him to do or to differentiate between that existing contract obligation and the public policy laden tort of abusive discharge (at pp 305-306, n 2). Plaintiff’s complaint alleges that “defendant’s internal regulations * * * required that plaintiff report any deviation from proper accounting practice to defendant’s top management” and that he was dismissed as a result of his doing just that. Because those allegations sufficiently state a cause of action for breach of contract not only under decisions of other States[6] but as a matter of New York law as well, I dissent from the majority’s affirmance of the dismissal of the fourth cause of action.
I do not gainsay that Martin v New York Life Ins. Co. (148 NY 117), however questionable its origin and continued existence, is the New York rule concerning employment contracts of unspecified duration. So in Haines v City of New York (41 NY2d 769, 772) we took pains to point out that unlike other contracts of unspecified duration, as to which the law will imply that the parties “intended performance to continue for a reasonable time”, that rule “[f]or compelling policy reasons * * * has not been, and should not be, applied to contracts of employment”. But the policy reasons behind refusing to read a durational term into *311 employment contracts do not require reading out of such contracts the “implied covenant of fair dealing and good faith” which “is implicit in all contracts” (Van Valkenburgh, Nooger & Neville v Hayden Pub. Co., 30 NY2d 34, 45; accord Kirke La Shelle Co. v Armstrong Co., 263 NY 79, 87) and is “a contractual obligation of universal force which underlies all written agreements” (Brassil v Maryland Cas. Co., 210 NY 235, 241).
I refer not to the promise that each party will use reasonable efforts to carry out the contract purpose, which may be implied-in-fact from the contract negotiations to establish consideration though the writing be “imperfectly expressed” in that respect (Wood v Duff-Gordon, 222 NY 88, 91), but to the covenant implied by the law that the parties will not “frustrate the contracts into which they have entered” and that one party will “not intentionally and purposely do anything to prevent the other party from carrying out the agreement on his part” (Grad v Roberts, 14 NY2d 70, 75) or that may hinder or obstruct his doing that which the contract stipulates he should do (Patterson v Meyerhofer, 204 NY 96, 101).
Under this principle it was held in Meyerhofer that by entering into a contract to purchase from plaintiff property which defendant knew plaintiff would have to buy at a foreclosure sale in order to convey, defendant impliedly agreed that she would do nothing to prevent him from acquiring the property at such sale and, having outbid him at the sale, was liable to him for the difference between the contract price and the price she paid to the referee in foreclosure. Indeed, more than 100 years ago we applied the principle to a broker’s commission contract, though terminable at will, holding in Sibbald v Bethlehem Iron Co. (83 NY 378, 384) that “Where no time for the continuance of the contract is fixed by its terms, either party is at liberty to terminate it at will subject only to the ordinary requirements of good faith” (emphasis supplied; see, also, Goodman v Marcol, Inc., 261 NY 188; Carns v Bassick, 187 App Div 280). And though a broker’s employment is occa *312 sional rather than continuous, we have recognized the role of good faith even as it relates to continuous employment, saying in Arentz v Morse Dry Dock & Repair Co. (249 NY 439, 444) with respect to a claimed contract of permanent employment of a general manager that “Plaintiff was not obliged to stay with the defendant for life, neither was defendant obliged to employ him beyond the time when in good faith it had no further use for his services” (emphasis supplied).
The principle, moreover, is espoused by the Restatement of Contracts, Second (§ 205), which flatly states that “Every contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement,” and which in Comment e and the Reporter’s Notes thereto indicates its application to the “abuse of a power * * * to terminate the contract” (at p 102) including “an express power to terminate a contract at will” (at p .104). It is recognized as well in section 1-203 of the Uniform Commercial Code and by Williston, Contracts (3d ed, §§670, 1295), which tells us in section 1295 (vol 11, p 39) that: “Wherever, therefore, a contract cannot be carried out in the way in which it was obviously expected that it should be carried out without one party or the other performing some act not expressly promised by him, a promise to do that act must be implied.” The same reasoning that reads into an output contract the requirement that the manufacturing plant continue to perform in good faith (Feld v Levy & Sons, 37 NY2d 466, 471) and into the contract of an employee hired to invent that the resulting patent belongs to the employer (Cahill v Regan, 5 NY2d 292, 296) though no express provision to such effect be contained in the contract requires reading into the contract the present plaintiff alleges a provision that he will not be terminated for doing that which the parties have expressly contracted he shall do.[7] To be borne in mind is the fact that we deal not *313 with a contract which by its expressed term authorizes the employer to terminate without cause, but with one in which, because no durational term has been expressed, the law implies a right of termination. In the latter situation only the strongest of policy reasons can sustain reading the implied right of termination as a limitation upon the express obligation imposed upon the employee (see Burton, Breach of Contract and the Common Law Duty to Perform in Good Faith, 94 Harv L Rev 369, 399-401; Summers, General Duty of Good Faith — Its Recognition and Conceptualization, 67 Cornell L Rev 810, 827; Summers, “Good Faith” In General Contract Law and the Sales Provisions of The Uniform Commercial Code, 54 Va L Rev 195, 251).
There is, moreover, no compelling policy reason to read the implied obligation of good faith out of contracts impliedly terminable at will. To do so belies the “universal force” of the good faith obligation which, as we have seen, the law reads into “all contracts.” Nor can credence be given the in terrorem suggestion that to limit terminable-at-will contracts by good faith will drive industry from New York (see Weiner v McGraw-Hill, Inc., 57 NY2d 458, 469 [dissenting opn]). That is no more than speculation and hardly appears acceptable in the face of (1) the recognition without apparent industrial exodus of the even more burdensome tort remedy for discharge of at-will employees by such industrial States as California, Connecticut, Illinois, Indiana, Maryland, Massachusetts, Michigan, New Jersey, Pennsylvania and Wisconsin (see Committee Report, at p 211, n 130; and De Giuseppe, 10 Ford Urban LJ, at p 23, n 101), and (2) the responses reported in Ewing, What Business Thinks About Employee Rights, a Harvard Business Review survey of employers reprinted in Individual Rights In The Corporation: A Reader On Employee Rights (Western & Salisbury eds), at page 21. The more particularly is this so because collective bargaining “just cause” provisions, which impose a greater burden on employers than does a good faith limitation (see Toussaint v Blue Cross & Blue Shield of Mich., 408 Mich 579) have not done so, and *314 because employers can obtain a large measure of protection by expressly reserving in the employment contract the right to terminate without cause.[8]
The fact that the Legislature has limited at-will discharge in the several ways listed in footnote 5 above but has not expressly established a breach of contract action for termination of at-will employment which violates the implied-in-law obligation of good faith provides no reason to await action by the Legislature. The at-will rule was created by the courts and can properly be changed by the courts but, more importantly, as demonstrated above, the rule has for at least a century been subject to the “universal force” of the good faith rule. The Legislature, therefore, had no reason before the present decision to believe that action on its part was required.
Nor ought we succumb to any “floodgates” argument. “This court has rejected as a ground for denying a cause of action that there will be a proliferation of claims. It suffices that if a cognizable wrong has been committed that there must be a remedy, whatever the burden on the courts” (Tobin v Grossman, 24 NY2d 609, 615; accord Prosser, Torts [4th ed], p 51). The argument is, moreover, specious. It is plaintiff’s burden if he is to avoid summary judgment to come forward with admissible evidence that he was terminated because he reported, as required, a deviation from proper accounting practice (Gelder Med. Group v Webber, 41 NY2d 680, 684) and it will be his burden to establish that fact before the jury (see Goodman v Marcol, Inc., 261 NY 188, supra; Sibbald v Bethlehem Iron Co., 83 NY 378, 390, supra; McDonnell Douglas Corp. v Green, 411 US 792). And though the burden of going forward, once plaintiff establishes a prima facie case, will shift to defendant (see Matter of Axel v Duffy-Mott Co., 47 NY2d 1, 9; cf. Mt. Healthy City Bd. of Educ. v Doyle, 429 US 274, 287; Committee Report, at p 195), it will remain the plaintiff’s burden to convince the jury that he was fired for the reason he alleged, not the employer’s burden to convince them that he had other good cause to fire the employee (see *315 Blades, 67 Col L Rev, at p 1429). True, the evidence presented by an employer in such a situation will normally be of other cause to fire, but there is no reason to believe that under proper instruction from the court as to burden of proof (cf. PJI 4:31) a jury cannot be trusted to determine the good faith issue thus presented as they now regularly do in all the other good faith situations presented to them.
It may well be that plaintiff’s fourth cause of action will not survive a motion for sunimary judgment or, if it does, will not succeed before a jury. To dismiss it at this stage, on the pleadings alone, is, however, wholly inconsistent with the prior holdings of this and other courts with respect to the implied-in-law obligation of good faith. I therefore, cannot vote for doing so.
Chief Judge Cooke and Judges Jasen, Wachtler, Fuchsberg and Simons concur with Judge Jones; Judge Meyer dissents in part and votes to further modify by reinstating the fourth cause of action in a separate opinion.
Order modified, with costs to appellant, by reinstating the fifth cause of action and, as so modified, affirmed.

. Martin v New York Life Ins. Co. (148 NY 117, 121) accepted as correct the rule stated in section 136 of Wood, Master and Servant (2d ed) that “the fact that the compensation is measured at so much a day, month or year does not necessarily make such hiring a hiring for a day, month or year, but that in all such cases the contract may be put an end to by either party at any time, unless the time is fixed”. Though later stated to have been “deliberately adopted, all the judges concurring, to settle the differences of opinion which had prevailed in the lower courts” (Watson v Gugino, 204 NY 535, 541-542), Martin’s adoption of the rule may fairly be characterized as bizarre in light of (1) Wood’s concession that “In England it is held that a general hiring, or a hiring by the terms of which no time is fixed, is a hiring by the year”, (2) the contrary statement of the rule in Adams v Fitzpatrick (125 NY 124) in reliance upon the English cases cited at pages 128 and 130 and the New York cases cited at page 130 (see, also, Davis v Gorton, 16 NY 255; and Bleeker v Johnson, 51 How Prac 380), (3) the fact, documented in the Annotation at 11 ALR 469, 476, and in a number of the articles referred to in footnote 4 below, that Wood’s rule was not supported by any of the cases cited by him, and (4) the logical inconsistency of a rule the ultimate statement of which is that “permanent employment means nothing more than that the employment is to continue indefinitely and until one or the other of the parties wishes for some good reason to sever the relation” (Arentz v Morse Dry Dock & Repair Co., 249 NY 439, 444).

. The concept that a restriction upon an employer's right to terminate was a violation of due process (Adair v United States, 208 US 161; Coppage v Kansas, 236 US 1) has long since given way to decisions upholding the constitutionality not only of various labor acts but also of restrictions upon discharge for reasons of race, sex, age, political affiliation and the like (see n 5 below).

. (Report of Committee on Labor and Employment Law, At-Will Employment and the Problem of Unjust Dismissal, 36 Record of Assn of Bar of City of New York [hereafter “Committee Report”] 170, 175 ff.)

. (Committee Report, op. cit.; Blades, Employment. At Will vs. Individual Freedom: On Limiting The Abusive Exercise of Employer Power, 67 Col L Rev 1404; Blumrosen, Workers’ Rights Against Employers and Unions: Justice Francis — A Judge For Our Season, 24 Rutgers L Rev 480; Christiansen, A Remedy for The Discharge Of Professional Employees Who Refuse To Perform Unethical Or Illegal Acts: A Proposal In Aid *309 Of Professional Ethics, 28 Vand L Rev 805; Conway, Protecting The Private Sector At Will Employee Who “Blows The Whistle”: A Cause Of Action Based On Determinants Of Public Policy, 1977 Wis L Rev 777; De Giuseppe, Effect of the Employment-At-Will Rule on Employee Rights to Job Security and Fringe Benefits, 10 Ford Urban LJ 1; Feerick, Continued Erosion of Employment-At-Will, NYLJ, Feb. 4, 1983, p 1, col 1; Feinman, Development of the Employment at Will Rule, 20 Am J Leg Hist 118; Gelb, Non-Statutory Causes of Action For an Employer’s Termination of an “At Will” Employment Relationship: A Possible Solution to the Economic Imbalance in the Employer-Employee Relationship, 24 NY L School L Rev 743; Glendon and Lev, Changes In the Bonding of the Employment Relationship: An Essay on the New Property, 20 BC L Rev 457; Harmon and Kolko, Developments In the Law Covering Abusive Discharges, NYLJ, Aug. 26,1982, p 1, col 3; Madison, Employee’s Emerging Right To Sue For Arbitrary Or Unfair Discharge, 6 Employee Relations LJ 422; Mathews, A Common Law Action for The Abusively Discharged Employee, 26 Hastings LJ 1435; Peck, Unjust Discharges From Employment: A Necessary Change In The Law, 40 Ohio St U 1; Peck, Some Kind of Hearing For Persons Discharged From Private Employment, 16 San Diego L Rev 313; Shapiro and Tune, Implied Contract Rights To Job Security, 26 Stanford L Rev 335; Shemaria-Weber, A Remedy for Malicious Discharge of the At-Will Employee, 7 Conn L Rev 758; Summers, Individual Protection Against Unjust Dismissal: Time For A Statute, 62 Va L Rev 481; Travis, Abusive Discharge Cases To Test Common-Law Rule, NYU, Sept. 24, 1982, p 1, col 2; Vernon and Gray, Termination At Will — The Employer’s Right to Fire, 6 Employee Relations U 25; Weyand, Present Status of Individual Employee Rights, NYU 22d Annual Conf on Labor, p 171; Willis, Contracts — Employee’s Discharge Motivated By Bad Faith, Malice or Retaliation Constitutes a Breach of an Employment Contract Terminable at Will, 43 Ford L Rev 300; Note, Protecting At Will Employees Against Wrongful Discharge: The Duty To Terminate Only In Good Faith, 93 Harv L Rev 1816; in addition to the articles listed, pertinent annotations will be found at 51 ALR2d 742; 63 ALR3d 979; 93 ALR3d 659; 9 ALR4th 329; 12 ALR4th 544.)
The judicial writings are too numerous to list, but see Committee Report (at p 211, n 130) and De Giuseppe (10 Ford Urban U, at p 23, n 101).

. (E.g., Civil Rights Law, §§ 47-a, 79-i; Civil Service Law, §§ 75-76; CPLR 5252; Election Law, § 17-154, subd 3; Executive Law, §§ 292, 296; General Obligations Law, § 5-301; Labor Law, § 27-a, subd 10; § 662, subd 1; § 704, subd 8; §§ 736, 880, subd 3; Military Law, §§ 317, 318; Workers’ Compensation Law, § 120.) A “whistle-blower” bill (A 12451; S 9566) failed to pass the 1982 Legislature, but has been reintroduced at the present session (Legislative Gazette, Feb. 7, 1983, p 9).

. (Pugh v See’s Candies, 116 Cal App 3d 311; Cleary v American Airlines, 111 Cal App 3d 443; Magnan v Anaconda Inds., 37 Conn Sup 38; Higdon Food Serv. v Walker, 641 SW2d 750 [Ky]; Fortune v National Cash Register Co., 373 Mass 96; Toussaint v Blue Cross & Blue Shield of Mich., 408 Mich 579; Gates v Life of Mont. Ins. Co., 638 P2d 1063 [Montf]; Cloutier v Great Atlantic & Pacific Tea Co., 121 NH 915; Pierce v Ortho Pharm. Corp., 84 NJ 58; Rees v Bank Bldg. & Equip. Corp. of Amer., 332 F2d 548 [applying Mo law]; but see Whittaker v Care-More, Inc., 621 SW2d 395 [Tenn].) For discussion of the implied obligation of good faith as a limitation upon the right to terminate an at-will employee see Committee Report (at p 182 if; De Giuseppe, 10 Ford Urban LJ, at p 24; Glendon and Lev, 20 BC L Rev, at pp 471-472; Madison, 6 Employee Relations LJ, 422; Note, 93 Harv L Rev 1816; Comment: Employment Contracts — Implied Covenant of Good Faith, 62 Mass LQ 241).

. Ironically, the employer’s implied absolute right to terminate at-will employment for any reason or for no reason had its origin in the necessity of according the employer mutuality with the right of the employee to quit his job at any time (Blades, 67 Col L Rev, at p 1419). Logically, of course, the same principle of mutuality requires that if, as *313 plaintiff alleges and must prove in order to succeed, defendant’s contract with him required him to report to defendant’s top management any deviation from proper accounting practice, plaintiff’s employment not be terminated because he did so.

. Such a contract is not per se unconscionable (Zapatha v Dairy Mart, 381 Mass 284).